# Hagan *et al v.* The State.

*Indictment for Larceny under Section 3707 of Revised Code.*

1. " *Warehouse;* " *what is, within meaning of* § 3707 *of Rev. Code.* — A covered structure, used for storing cotton bales, one side and end of which were planked up, and the others left open so that wagons could drive under to load and unload, which, together with two acres of land connected with it, was inclosed by a plank fence nine feet high, the gates of which were kept locked, constitutes a " warehouse," within the meaning of section 3707 of the Revised Code.

2. *Same; presumption as to legislative meaning.* — In construing the word " warehouse," as used in a penal statute punishing larceny from it and other like buildings, the legislature must be presumed to have meant such " warehouses " as were familiar to, and in common use by, the people.

APPEAL from Circuit Court of Wilcox.

Tried before Hon. JOHN K. HENRY.

The facts are sufficiently stated in the opinion.

R. GAILLIARD, for appellants. — The word " *warehouse* " had a technical meaning before our statute was adopted. *Regina* v. *Hill*, 2 Moody & R. 458 ; Foster's Crown Cases, 77 ; 1 Leach C. C. 287. By the term " warehouse " " places where goods are deposited until sent away, without any view to sale, are not included." In 39 Ala. 679, under a charge for larceny from a dwelling-house, a stealing of clothes from the edge of a piazza was held not to constitute the offence. The word " dwelling-house " is held to have the same meaning in the statute against burglary as against larceny. *Ex parte Vincent*, 26 Ala. 145. The structure, from which the cotton was taken, was certainly not a *house*. Burglary could not be committed by breaking into it. Not possessing the characteristics of a house at all, it cannot be a " warehouse." Certainly, a stealing from such a place as this is not as much within the spirit of the statute as was the stealing from the piazza of the " dwelling-house " (39 Ala. 679) ; and the latter case is therefore an authority against the charge given by the court.

JOHN W. A. SANFORD, Attorney General, with whom was JOHN Y. KILPATRICK, *contra*. — The place described was a warehouse within the meaning of the statute. *Owen* v. *Boyle*,

22 Maine, 47 ; *Allen* v. *The State*, 10 Ohio State, 287 ; *Wilson*
v. *The State*, 24 Conn. 57. It is submitted that burglary could
be committed in this structure. The openings are *necessary* to
the proper handling and storing of cotton.

MANNING, J.— The appellants in this cause were found
guilty of the larceny of three bales of cotton, of value exceed-
ing $180, "in and from the warehouse" of James C. Wilson,
in Wilcox county. And the principal question presented is,
whether the place from which the cotton was taken is a "ware-
house," within the meaning of § 3707 of the Revised Code.

That section is as follows: "Any person who steals any per-
sonal property from any building on fire, or which was removed
in consequence of an alarm of fire, or from the person of an-
other, or who commits the crime of larceny in any dwelling-
house, storehouse, warehouse, shop, or steamboat, must, on con-
viction, if the property stolen exceeds fifty dollars in value, be
punished as if he were guilty of grand larceny."

The description of the place supposed to be a warehouse is
that it was "a cotton yard, and a covered and inclosed cotton
shed, owned and kept by said Wilson," who was warehouse
keeper at Prairie Bluff, in Wilcox county. " In said cotton yard
was a covered cotton shed, used by said Wilson for the purpose
of storing cotton bales under for the public." The cotton yard
was about two acres in area, and " was inclosed all around with
a fence of plank nine feet high." The shed was about 100 yards
long and 30 yards wide. The sides of it, in the yard and one
end, were entirely open from the ground to the roof, so that
wagons drawn by mules might pass under and out from said
shed in loading and unloading, but the whole was inclosed by
the fence above named. The said shed was supported by posts,
and the fence of plank which inclosed said yard, when it
reached the line of posts in the rear of said shed, was con-
tinued along the same, by plank being nailed to the back or
rear posts supporting the shed at one end ; thus leaving one
whole entire side, and one end of said shed, entirely open from
the ground to the roof, but which was inclosed by the fence
aforesaid ; the fence was continuous, inclosing the entire shed
within the area of said yard. The gates of said yard were
kept locked, and were locked at the time the cotton was sto-
len," &c.

This is a pretty good general description of the warehouses
kept at river landings, and in cities of this State for the storage
of cotton in bales ; except that in the cities, and at some river
landings, the inclosure of the yard is ordinarily a brick wall,
and the sheds often cover a larger portion of the area of the
yard.

[Hagan *v.* State.]

This manner of constructing warehouses for the storage of cotton, at places where it is accumulated in large quantities, results from the fact that this valuable commodity being bulky is hauled to and from the places of deposit, in large wagons or drays, and has frequently to be removed, in order to be sampled, weighed, and examined; or to enable the cotton of others, stored in the same place to be so, and to be marked and shipped. A large uncovered court or area, and one or more covered structures with one open side, so that the cotton may be easily got at and removed, are required for the convenient handling of it. This is well understood by everybody. Therefore the walls, whether of brick and mortar, or of wooden planks, which inclose these areas and sheds, are quite a different thing from the fences that surround dwelling-houses, and the out-houses, curtilage, &c., about them, to which they are likened in the argument. In the former case, the inclosure is a part of the entire structure; while in the latter it is wholly independent of, and merely an outer protection for, the houses and grounds within, and is erected generally to keep out domestic animals and fowls.

It has been ingeniously argued for the appellant, that such an inclosure, as the cotton warehouse under consideration is not a place in which burglary can be committed, and that the word " warehouse " is used in § 3707 in the same sense as in § 3695, relating to that crime.

Whether the former proposition is true or not, we need not now inquire. But a cardinal rule of ascertaining the meaning of words to be interpreted is to consider the subject-matter about which they are employed, and the other words used in connection with them. Burglary is not committed without a breaking into the building which is the subject of it. Hence if a man find a dwelling-house open in the night-time, and enter and steal from it, he does not commit burglary, because it was already open; and so of any other open building. But that is no reason why the stealing from an open dwelling-house, or some other accessible structure, should not be punished as a worse offence than stealing from the outer premises. It is made punishable as such by § 3707.

By this section also the stealing from a steamboat is put upon the same level as the stealing from a warehouse. The cargo of a river steamboat is carried mainly upon the deck, which is entirely uninclosed. There would be no burglary committed by one going upon such deck in the night-time for a felonious purpose. Yet a stealing from it is, by this section, distinguished from, and made more severely punishable than stealing from an open yard.

We are of opinion that the legislature must have had in con-

[Walker v. State.]

templation, when making this enactment, such warehouses as they and our people are familiar with throughout the State, and that the structure described in this cause was a "warehouse" within the meaning of that word in that enactment.

We do not agree with counsel for appellant in the construction of the charge of the court, that the judge therein assumed it to be proved that the property alleged to have been stolen was of a value exceeding $100. The question of value seems to have been sufficiently referred to the jury. And the entire charge refers to the second count in the indictment, averring that the larceny was from a warehouse.

The judgment of the circuit court is affirmed.

