THOMAS BALLARD, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Trial**: EXCLUDING EVIDENCE: ERROR WITHOUT PREJUDICE. Where an objection to a question is sustained and the testimony excluded, if the witness is afterwards recalled and fully examined upon the matters presented by the former interrogatories the ruling of the court in sustaining the objection, even if erroneous, will not be sufficient cause for reversing a judgment unless it should affirmatively appear that the prisoner was prejudiced thereby.

2. **Witnesses**: EXPERTS. Hypothetical questions to experts must be framed so as to fairly reflect facts either admitted or proved by other witnesses and must not assume as proven that which has not been, nor should they be based upon conclusions of fact which can only be found by a jury.

3. **Criminal Law**: TRIAL: WITNESSES FOR THE STATE. In the trial of a criminal prosecution wherein a defendant is arraigned upon an indictment found by a grand jury, the state is not precluded from the examination of witnesses whose names are not endorsed upon the indictment.

4. **Evidence**: STATEMENTS OF PRISONER. It is not error to allow an officer who arrested a defendant to testify as to statements made by such defendant while in custody, if it be shown that such statements were made voluntarily and without any induce-

39

ments—of hope or fear—being made or offered by such officer or other person.

5. **Instructions:** CLERICAL MISTAKE OF CLERK IN COPYING. A clerical mistake of the clerk of a trial court in copying an instruction into the transcript will not be sufficient cause for reversing a judgment if it affirmatively appears by the phraseology of the instruction what its original language was, and that such instruction, being upon an immaterial matter, could work no prejudice to the party on trial even if correctly copied.

6. ———. The charge of the court to a trial jury should be a clear and explicit statement of the law applicable to the facts in the case.

7. **Criminal Law:** INSANITY AS A DEFENSE. Where in a criminal case the accused relies upon insanity as a defense, and there is testimony tending to prove such insanity, the burden of proof is on the prosecution to show sanity. *Wright v. The People*, 4 Neb., 407.

8. **Instructions to Jury.** If one of the paragraphs in the charge of the court to the jury misstates the law upon a material point, such error will not be cured by another paragraph which states the law correctly, because the jury would be left in doubt as to which paragraph was correct. *Wasson v. Palmer*, 13 Neb., 376.

9. ———. Instructions to a jury must be based upon the evidence adduced on the trial.

ERROR to the district court for Douglas county. Tried below before NEVILLE, J.

*O'Brien & O'Brien* and *Charles P. Burkett* (with whom were *Scott & Scott*), for plaintiff in error.

*William Leese, Attorney General,* and *Lee S. Estelle, District Attorney,* for the State.

REESE, J.

Plaintiff was convicted of murder in the first degree and sentenced to be hanged. He alleges error in this court, and, under the provisions of the constitution of the state, the execution of the sentence is suspended by act of law until the case is reviewed by the supreme court.

Ballard v. State.

Before entering upon the discussion of the questions presented by this record we deem it proper to say that the brief of counsel for plaintiff in error contains an unwarranted and unjust attack upon the learned and impartial judge who presided at the trial in the district court. We have examined the record carefully from the beginning to the end for some evidence of the bias and prejudice against the prisoner so often and persistently imputed to the trial judge, and can find no trace whatever of any proof of such feeling or action on his part. So far as the record discloses, it is absolutely wanting. Such statements and insinuations, unless founded upon the record, can be of no possible benefit to a cause, and no excuse can be found for their use. It often happens that in the hurry and excitement of a trial in which great interest is taken, and where little, if any, time can be taken for reflection and investigation by the judge, where decisions must be made upon a moment's notice, erroneous rulings may be made by which the party on trial is prejudiced. Such has been the history of courts ever since their establishment. The most profound judges have erred, but such errors are not imputed to them as any evidence of a want of impartiality or of the existence of bias. It is true that there are occasional exceptions to the rule, but they are rare, and evidence of the fact can usually be found in the records made. While errors may be found in this case prejudicial to plaintiff in error, yet none of them suggest the existence of anything upon the part of the trial judge but a desire to give to plaintiff in error a fair and impartial trial. Indeed, it affirmatively appears that all reasonable efforts were made in that direction, and the unusual incident is shown to have occurred of the court adjourning at an early hour in order that the attorneys conducting the defense might take time to prepare proper questions to propound to a witness, a thing they were unable to do while the trial progressed.

The testimony adduced on the part of the state leaves no doubt of the fact of the killing by the accused.   It was testified to clearly and unequivocally by a number of witnesses, and not denied or disputed by any witness on the part of the defense.   The defense interposed was that of insanity.   This insanity, it is claimed, was produced by the long continued use of intoxicating liquors, and a condition of intoxication at the time of the killing.   The form of insanity known as dipsomania was principally relied on.   The testimony shows that plaintiff in error had, for a number of years, been addicted to the use of intoxicating liquors, which resulted .occasionally in prolonged " sprees" of drunkenness.   But these debauches were not of very frequent occurrence; many months sometimes intervening between them.   During most of the time— nearly all—he was able to transact ordinary business, and just prior to the killing was employed as night clerk and " runner" for the St. James Hotel in the city of Omaha, a part of his duties being to be at the railroad depots on the arrival of trains and solicit customers for the hotel; and at times attending bar in a saloon maintained in the hotel with which he was connected.   The deceased, Henry Verpoorten, was also employed in the same hotel, and the day before the commission of the homicide plaintiff in error was discharged and Verpoorten retained.   On that day, which was Sunday, plaintiff in error showed indications of being somewhat under the influence of liquor, as some of the witnesses thought, and late in the afternoon went into the saloon where Verpoorten was employed and shot him, Verpoorten dying instantly.   As a new trial must be had, it is not deemed proper to discuss the testimony or express any opinion upon the facts not conceded.

After the testimony for the state had been introduced a number of witnesses were examined who testified to their acquaintance with plaintiff in error, his habits of excessive drinking, intoxication, etc.   Dr. Spaulding was called and

examined as to insanity resulting from drunkenness, and as to the form of insanity known as dipsomania.

For the purpose of presenting one of the alleged errors relied on by plaintiff in error, and one which may arise upon a subsequent trial, I here quote from the record certain questions, objections, and the rulings of the court:

"Q. When a man has been irresistibly in the habit of drinking intoxicating liquors periodically, to excess, and has contracted an irresistible desire for its use—when under the influence of liquor—what, in your opinion, would be his condition as to being sane or insane?

"Objected to as incompetent. Sustained. Defendant excepts.

"Q. When a man has been irresistibly in the habit of using intoxicating liquors for seventeen years more or less to excess, at intervals, say, from a week to six weeks apart, being drunk for two weeks and sober for a period between that and his next debauch, state whether such a man would be considered, during the time of his intoxication, as free from the disease known as dipsomania?

"Objected to as immaterial. Sustained. Defendant excepts.

"Q. When a man has used intoxicating liquors for a period of ten years to excess, during from five to seven days at a time, then an interval of from four weeks to three months intervening between that and the next time when he used intoxicating liquor to excess, and so continued irresistibly to use it for from five to eight days, and so continued in that intermittent way to use liquor, being sober at times and drunk at others for ten years, what is your opinion as to his being entirely free from any disease known under the head of any of the general subdivisions of insanity while laboring under the influence of intoxicating liquor at any one of these times?

"Objected to as incompetent—sustained. Defendant excepts."

The court here adjourned until the next day to allow counsel to "frame an hypothetical question," which was done, and the witness examined thereon during the course of the trial. As the witness was fully examined during the subsequent stages of the trial, whatever error might have been committed by the ruling of the court in sustaining the objections was effectually cured, and there would be no ground for complaint. But was the ruling erroneous?

The definition of dipsomania given by this witness, and which is no doubt correct, is as follows: "Dipsomania is an irresistible impulse to indulge in intoxication, either alcohol or other drugs—opiums." This mania or disease is classed as one of the minor forms of insanity. Applying this definition to the first of the above interrogatories the question might be stated thus:

"If a man has been suffering from dipsomania, and has contracted dipsomania, what in your opinion would be his condition as to being sane or insane?" The same observations are applicable to the second question, except that it is more obnoxious to the objection than the first, as the question is asked directly whether such a person would be "free from the disease known as dipsomania?" The third is substantially the same except that the time referred to is "while laboring under the influence of intoxicating liquor." There seemed to be an "irresistible" impulse operating on the mind of counsel to include the word "irresistible" in all his forms of interrogatory, and this, too, without any proof of the irresistible desire for intoxicating liquors on the part of plaintiff in error. It is true the testimony shows repeated intoxications for a number of years, but there is nothing which negatives the idea of these "sprees," as they are termed by the witnesses, being entirely voluntary. In fact, the power to refrain from the use of intoxicants for a considerable time is clearly shown. He became intoxicated as hundreds of other men with depraved appetites and passions do, but, so far as the testimony goes, it

was his pleasure to do so. The ruling of the court was clearly correct.

Objection was made to the examination of certain witnesses produced by the state, for the reason that their names were not endorsed on the back of the indictment. The objection was properly overruled. We know of no provision of the statute which was violated thereby.

Thomas Perionett, the officer who arrested plaintiff in error soon after the homicide, was a witness on the part of the state. He testified to certain statements made by plaintiff in error to himself and others after the arrest. This testimony was objected to as incompetent. We are not informed anywhere in the printed argument of counsel for plaintiff in error as to the specific ground for this objection, but suppose it is based upon the fact that the witness was an officer having the prisoner in custody at the time the statements were made. In such case it is well settled that the statements or confessions of a prisoner to one in whose custody he may be, must be shown to be voluntary and without inducements held out by the officer, either of fear or hope, before they can be admitted in evidence. But in this case these conditions were fully shown. The officer testified not only that he had not offered any inducements, but that he cautioned the prisoner not to talk to him, and advised him not to talk about the matter to any one. The testimony was admissible.

It is alleged that the court erred in giving certain instructions to the jury, which we will next notice.

The first instruction complained of is the seventh of those given by the court upon its own motion. It is as follows:

"Murder in the first degree is defined by our statute, which I have given you in my second instruction, and the definition there given by our law-making power is so plain and concise that I feel confusion in attempting a further definition than a short repetition.

"Should you find that Henry M. Verpoorten was alive in Douglas county on the fifteenth day of March, 1885; that said Verpoorten is now dead; that he died from an injury from the hands of some one other than himself; that he came to his death by a wound in the left side inflicted by a bullet discharged from a pistol; that the defendant discharged the pistol; that the defendant discharged the pistol and inflicted the wound of which said Verpoorten died—if you are satisfied of the truth of all the above stated facts beyond a reasonable doubt, then it becomes your duty from the evidence to hunt for a motive and design on the part of the .defendant, and if you find from the evidence, beyond a reasonable doubt, that the defendant purposely, and with deliberation and premeditation, and with malice deliberate and premeditated, did the killing, then you should find defendant guilty of murder in the first degree."

The first criticism which is made upon this instruction is as to the use of the word "feel," near the close of the first paragraph. It is said, and no doubt truthfully, that the instruction as originally written and read to the jury contained the word "fear" instead of "feel," but that by the mistake or carelessness, or otherwise, of some copyist since the trial the word has been changed from "fear" to "feel." That the learned judge told the jury that the crime of murder in the first degree was so plainly defined in the statute that he feared confusion should he attempt a more particular definition. An inspection of the language for a moment would impress one that such is the case. Clerks of courts should exercise particular care to see that the records of trials, including instructions, are correctly copied when making transcripts. It is of vital importance that such mistakes should not occur. While this mistake might not and would not work a reversal of the judgment, yet no latitude in such matters should be allowed by clerks. It is their duty to see that no mistakes are made.

The objection to the last paragraph of the instruction is to that clause which informs the jury that if they find that plaintiff in error killed Verpoorten in the manner described, it then became their duty "from the evidence to hunt for a motive and design on the part of the defendant," etc. It must be conceded that this part of the instruction is not so clear in its meaning as might be desired. From what immediately follows it was evidently the intention of the court to instruct the jury that if they found that plaintiff in error killed the deceased in the manner stated, then they should inquire whether such killing was done "purposely and of deliberate and premeditated malice," as required by section 3 of the criminal code. "The charge of the court should be a clear and explicit statement of the law applicable to the facts in the case." *Milton v. The State*, 6 Neb., 136. The instruction before us can not be said to comply with these requirements. It might be said that the instruction would not be prejudicial, as it might be construed to favor plaintiff in error by requiring them to find a motive when none was shown to exist and none necessary to have been proven.

The next instruction which it is deemed necessary to notice is the thirteenth. It is as follows: "You are instructed that if you are satisfied from the evidence that the defendant was, at the time of the killing, insane, aside from being under the influence of liquor, then you should acquit the defendant of all three of the grades of criminal homicide and turn him loose. If he was at the time insane he cannot be convicted of any offense whatever."

It is argued with considerable degree of earnestness that the phrase "and turn him loose," as found in the instruction, while not so intended, was a reminder to the jury that if plaintiff in error was acquitted by them he would be turned loose upon society, and be thus permitted to kill others as he had the deceased. And not only so, but that the jury by returning such a verdict would be held, to

some extent, responsible for the offenses which he might commit or the injury which he might do. It is true, as argued by counsel at the bar, that it is not the province of a trial jury to turn any person loose; that they simply pass upon the guilt or innocence of the person on trial, and that it is not the duty of the courts and their officers to decide whether or not a prisoner shall be discharged.   Yet it is also true that a verdict of not guilty would necessarily result in the discharge of a prisoner, so far as that charge against him would be concerned, and the suggestion contained in the instruction would be nothing more or less than what every intelligent juror would know would be the result of a verdict of not guilty.   It would, perhaps, be difficult to say, as matter of law, that the instruction for that reason is erroneous, yet it would also be difficult to say whether or not the objectionable language would or did result in any prejudice to the prisoner on trial.   It perhaps might tend to do so, and if so it would be objectionable.

But it seems to us that counsel have entirely omitted the vital objection to this instruction, and this being a case involving the life of plaintiff in error, and the instruction being excepted to, it is the duty of the court to protect him. The jury are told by it that if they are "*satisfied* from the evidence that the defendant was at the time of the killing *insane*, aside from being under the influence of liquor," they should acquit him.   In *Wright v. The People*, 4 Neb., 407, Chief Justice Lake, in discussing the rule of law in cases involving the insanity of a person charged with crime, lays down the rule as follows: "We hold the true rule to be that whenever there is testimony tending to rebut the legal presumption of sanity, the jury should be instructed, substantially, that unless they are satisfied beyond a reasonable doubt that the act complained of was not produced by mental disease, the accused should be acquitted on the ground of insanity."   This is now the well-established law

of this as well as many other states, and was so given to the jury in this case by the trial court in the twelfth instruction; but by an oversight, or through inadvertence, perhaps, this instruction was allowed to go to the jury without observing the import of the language which it contained. There was *some* evidence—however slight is immaterial—tending to prove the insanity of plaintiff in error. This evidence changed the burden of proof onto the state, and it was not for the jury to be "satisfied from the evidence that the defendant was at the time of the killing insane," before they could acquit, but it was for them to be satisfied of his *sanity beyond a reasonable doubt* before they could find him guilty. The instruction, in this respect, was erroneous, and the giving of another correct instruction could not cure it. *Wasson v. Palmer,* 13 Neb., 376.

Instruction numbered sixteen and a half is complained of as not being based on or called for by the evidence in the case. As another trial must be had, we need not here copy the instruction nor discuss the evidence, as the testimony in the subsequent trial will probably differ somewhat from the testimony in this record. It is well settled that the instructions must be based on the evidence. *Meredith v. Kennard,* 1 Neb., 319. *Neihardt v. Kilmer,* 12 Id., 38. *City of Crete v. Childs,* 11 Id., 257.

On account of the errors above noted the judgment of the district court is reversed, and a new trial ordered. The cause is remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.