42  841
046  555
42  841
58  728

## ISAAC WHITMAN V. STATE OF NEBRASKA.

FILED NOVEMBER 21, 1894.   No. 6916.

1. **Criminal Law:** WEIGHT OF EVIDENCE: REVIEW. The jury must determine the weight of evidence adduced, and its estimate thereof will not be interfered with, unless it is clearly wrong.

2. **Burglary:** EVIDENCE: INSTRUCTIONS. An instruction *held* proper which, in effect, left it to the jury to determine what weight and effect should be given the circumstance that the accused, soon after the burglary charged, was in possession of goods which had been taken from the store where the burglary had been committed.

ERROR to the district court for Lancaster county. Tried below before HALL, J.

*J. C. Johnston,* for plaintiff in error.

*George H. Hastings, Attorney General,* for the state.

RYAN, C.

Plaintiff in error was convicted of the crime of burglary in the district court of Lancaster county, and was sentenced to an imprisonment of eighteen months' duration, and to pay the costs of prosecution. On the hearing of the motion for a new trial there appears to have been used certain affidavits which are identified by a mere certificate of the clerk of the aforesaid district court. This did not cure the failure, by bill of exceptions, to render certain the claim now made that they were used as evidence. (*Zimmer-*

*man v. Klingeman,* 31 Neb., 495; *Fitzgerald v. Benadom,*
35 Neb., 317; *Maggard v. Van Duyn,* 36 Neb., 862;
*Berneker v. State,* 40 Neb., 810.) ` There was no question
that during the night following the 22d day of November,
1893, a burglary was committed by the breaking and en-
tering of a store in Malcolm as charged. The contested ·
point was whether or not plaintiff in error was a party to
it. There was evidence that shortly before the crime re-
ferred to was committed plaintiff in error had boasted that
he and others were going to make some money ; that when
asked if they intended to "make it crooked," plaintiff in
error answered, "it didn't make any difference, but they
were going to make it—going to haul the whole damn
thing away." The object of the burglars was larceny, and
the evidence showed that groceries, dry goods, clothing,
handkerchiefs, etc., were removed from the store building
broken into; that a wagon had been placed near the back
door thereof to receive the stolen property; that this wagon
was traced directly to the city of Lincoln on the morning
of November 23, the "wabbling" of one of the wheels in
the frost rendering this an easy matter ; that between the
hours of 7 and 9 o'clock in the forenoon of the day last
named plaintiff in error offered for sale and actually sold
to one John L. Cox, in the northern part of the city of
Lincoln, a portion of the goods which had been removed
from the plundered store at Malcolm. The fact of the
sale of these goods rests almost entirely upon the evidence
of the purchaser, who, in giving testimony, admitted that
when he bought the goods he suspected they had been stolen,
and hinted as much to the plaintiff in error, who, by a
knowing smile, gave him to understand that his surmise
was correct. This witness at the time of this trial had
pleaded guilty to the charge of receiving stolen property,
knowing it to be such. He also was shown to have made
contradictory statements as to the manner of his coming
into possession of the stolen property, when by means of

search warrant said property was found scattered about in his dwelling house.    In addition to this, it was testified by one witness, the officer who assisted in making said search, that the general reputation of John L. Cox for truth and veracity in the neighborhood in which he lived was bad. Only one person saw any one at the house of Cox on the morning when he claimed to have bought the property of plaintiff in error, and that person was his wife.    She was not able to state, however, that plaintiff in error was the individual whom she saw.    She could only say that the moustache of each resembled that of the other.    Plaintiff in error testified that during the whole night of November 22, 1893, he was at the house of William Ringer in the southern part of the city of Lincoln; that up till between 12 and 1 o'clock of that night he was playing cards and drinking whiskey with Mr. Washburn, Mr. Barrett, and Mr. Ringer, in the house of Mr. Ringer.    The wife of the person last named, as well as Mr. Barrett and Mr. Washburn, corroborated the statement of the plaintiff in error as to playing cards until almost 1 o'clock of November 23.    William Sexton also testified that he met plaintiff in error in the southwestern part of the city of Lincoln about 8 or 9 o'clock of the forenoon of the day last named.    As an original question upon the record we should probably say that an *alibi* had been quite successfully established by the plaintiff in error.    We are not at liberty, however, to ignore the verdict of the jury, sanctioned as it has been by the refusal of the presiding judge to grant a new trial because of the alleged want of sufficient evidence to sustain it.    In *Palmer v. People*, 4 Neb., 68, the following apt language is used : " But if the evidence is conflicting, and the case has been fairly submitted to the jury, the verdict will not be disturbed.    So much depends on the manner and appearance of the witness while giving his testimony, that the question of his credibility must be left to the jury, and a reviewing court will not in such a case say, from an examination of the testimony, that the verdict

is erroneous. That the crime charged in this case was committed at the time and place charged in the indictment we think is clearly shown, and there is testimony connecting the plaintiff in error with the commission of the offense as strong as is often found in this class of cases." Again, in *Monroe v. State*, 10 Neb., 448, there was sustained by the citation of several authorities the following language: "The rule is well established in this court that where a verdict is clearly wrong it will be set aside; but where there is only doubt of its correctness, it will not be disturbed." In its later history this court has adhered to the same doctrine. (*Sloman v. Spellman*, 42 Neb., 165; *Johnson v. Guss*, 41 Neb., 19; *Quigley v. McEvony*, 41 Neb., 73.) Without referring to further decisions in support of this proposition, it is sufficient to say that it has uniformly been recognized as well established, and that governed by it we cannot reverse this judgment because of what, as an original question on the record presented, might seem to be a preponderance of the evidence in favor of the contention now made by the plaintiff in error.

But one question remains, and that arises on the 10th instruction given by the court in the following language:

"10. If you believe from the evidence, beyond a reasonable doubt, that soon after the burglary of the store-house of L. C. Meyer and the larceny of the goods therefrom a portion of the goods of said Meyer so stolen was in the exclusive possession of the defendant Isaac Whitman, you are instructed that this circumstance, if so found, is presumptive, but not conclusive, evidence of the defendant's guilt of larceny, and you should consider this circumstance, if so proven to your satisfaction, along with other evidence in the case in arriving at your verdict, giving it such weight and effect as you think it entitled to, and giving the defendant the benefit of any reasonable doubt of guilt."

The criticism of this instruction made by counsel for plaintiff in error is that under it the possession of recently

stolen goods justified a presumption of the burglary with which the accused was charged. We do not so understand it. The instruction confined the presumption which might be entertained to larceny of the goods themselves. As a distinct proposition the jury were told that if proven this circumstance (that is, the proof of larceny), along with other evidence in the case, should be considered in arriving at a verdict, the weight and effect to be attached to this circumstance being left to the jury. No repetition of the evidence is necessary to illustrate the significance of the possession of goods stolen from the store within twelve hours preceding such possession, the burglary charged having taken place within the space of time indicated. This possession, under the circumstances, might logically be considered sufficient to connect the possessor with the recent burglary by means of which the goods were taken from the possession of their rightful owner. It would probably have been better to have made no reference whatever to the presumption of larceny arising from the possession of recently stolen goods; though this reference was not wholly foreign to the facts disclosed by the evidence. In effect, however, the instruction was that as to the act of burglary the possession of the goods soon afterwards was a circumstance which the jury might properly take into consideration in determining whether or not plaintiff in error was connected therewith. The judgment of the district court is

AFFIRMED.