Metz v. State.

## GEORGE METZ v. STATE OF NEBRASKA.

FILED DECEMBER 7, 1895. No. 7708.

1. **Criminal Law:** SEPARATE TRIALS: INDICTMENTS. Defendants jointly indicted for a felony, in the discretion of the court, may be separately tried, on motion of either the state or a defendant.

2. ———: ———: OBJECTION. Objection to a severance comes too late after the formation of the jury.

3. **Burglary:** STOREHOUSE. A building, erected upon a farm, designed and used for the purpose of storing corn after it is husked, is a storehouse and warehouse within the meaning of section 48 of the Criminal Code defining burglary.

4. ———: EVIDENCE. Evidence examined, and *held* sufficient to establish that the burglary was committed in the night season.

5. ———: ———. A breaking necessary to constitute the crime of burglary may be by any act of physical force, however slight, by which the obstruction to entering is forcibly removed.

6. **Criminal Law:** WITNESSES: INSTRUCTIONS. Error cannot be successfully assigned upon the omission of the trial court to instruct the jury in a criminal prosecution that the failure of the defendant to testify creates no presumption against him, where no instruction presenting such special feature of the trial was requested.

7. **Instructions:** ASSUMPTIONS OF FACT. It is error to give an instruction which assumes a controverted material fact upon which there is a conflict of testimony.

8. ——: ERROR. The giving of an erroneous instruction is reversible error, although a correct exposition of the law on the same point has been given to the jury.

9. **Burglary:** POSSESSION OF STOLEN GOODS: EVIDENCE. That a building was burglariously entered, and property stolen therefrom was, soon thereafter, found in the exclusive possession of the accused, do not, alone, raise a presumption of law that he is guilty of the burglary. The inference to be drawn from such facts is for the jury alone to determine, when considered in connection with all the other facts proven.

ERROR to the district court for Lancaster county. Tried below before HOLMES, J.

*Alex. Altschuler, J. C. McNerney,* and *Frank D. Eager,* for plaintiff in error.

*A. S. Churchill, Attorney General,* and *George A. Day, Deputy Attorney General,* for the state.

NORVAL, C. J.

An information was filed in the district court of Lancaster county charging George Metz and Frank Milehem with the crime of burglary, by feloniously breaking and entering, in the night time, the storehouse and warehouse of one Jasper N. Binford. Metz, without objection on his part until after the jury were selected and sworn, was given a separate trial which resulted in a verdict of guilty. A motion for a new trial was overruled, and he was sentenced to an imprisonment of two years' duration, and to pay the costs of prosecution; from which he prosecutes a petition in error.

Objection is made that the plaintiff in error was tried separately and not jointly with Frank Milehem, with whom he was jointly charged in the information. Section 465

of the Criminal Code declares: " When two or more persons are indicted for felony, each person so indicted shall, on application to the court for that purpose, be separately tried," etc.   Under this statute severance and separate trials of persons jointly indicted or informed against are permissible in felonies, at the discretion of the court.   The application to award separate trials may come from the prosecuting officer as well as the defendants.  (*State v. Marvin*, 12 Ia., 499, *Allen v. State*, 10 O. St., 287; *Stewart v. State*, 58 Ga., 577.)   The record in this case fails to disclose upon whose motion the severance was granted; nor does it appear that any objection or exception was made by the plaintiff in error to a separate trial until after the selection of the jury.   This was too late to make the exception of any avail. (*State v. McLane*, 15 Nev., 345; *McJunkins v. State*, 10 Ind., 140.)

The plaintiff in error questions the sufficiency of the evidence to sustain the verdict.   The record shows that the prosecuting witness owned a building eight feet by twelve feet and twelve feet high, which was filled with ear corn. There was left an opening near the top through which the corn was thrown into the building, or crib as it is called by some of the witnesses.   During the night of August 8, 1894, without the knowledge or consent of Mr. Binford, a board near the bottom of this crib or building was removed, which let a quantity of the corn fall upon the ground. About twelve bushels of this corn was put into a wagon and hauled to Mr. Metz.   Early in the morning of August 9, the wagon and team were tracked by several persons to the prisoner's house, the corn in question was found in his possession, and the team and wagon were identified as belonging to the prisoner.   In addition to the facts and circumstances detailed above, the state produced as a witness one Henry Grossman, who testified, substantially, that Metz came to the witness and tried to induce him to falsely testify in this case, and that he, Metz, purchased the corn in

dispute from him. A written memorandum of such alleged sale, written by Metz in the account book kept by the witness, was introduced in evidence at the trial. The defendant called witnesses to establish an *alibi,*—that the prisoner was at home at the time the burglary was committed; also, that he purchased the corn from one Connely, and paid him for it. Notwithstanding this testimony, we are constrained to hold that the facts and circumstances detailed by the witnesses for the state were sufficient to justify the jury in reaching the conclusion that Metz participated in the burglary and the stealing of the corn.

The point is made in the brief of counsel for plaintiff in error, that the building, which the evidence disclosed was burglarized, is not the one that is described in the information, nor yet one of those mentioned in the section of the statute defining burglary. Whether this contention is well founded is the question which is now to be considered. Section 48 of our Criminal Code declares: " If any person shall, in the night season, willfully, maliciously, and forcibly break and enter into any dwelling house, kitchen, smoke house, shop, office, storehouse, mill, pottery, factory, water-craft, school-house, church or meeting house, barn or stable, warehouse, malt house, still house, railroad car factory, stationhouse, or railroad car, with intent to kill, rob, commit a rape, or with intent to steal property of any value, or commit any felony, every person so offending shall be deemed guilty of burglary, and shall be imprisoned in the penitentiary not more than ten nor less than one year." The information in the case charges the breaking and entering by the prisoner of a warehouse and storehouse. It will be observed that the provision of the Criminal Code copied above does not contain the word " corn-crib," but, among the buildings subject to burglary, the section enumerates a warehouse and a storehouse. If the building which was broken and entered by the accused is neither a warehouse nor storehouse, within the meaning of the statute

under consideration, then it is plain the crime charged has not been committed, and the judgment of conviction cannot stand. The question lies within a narrow compass, and is simply whether the words "warehouse" and "storehouse," as employed in the statute, can either, and if so, which, of them be so construed as to include a building in which corn is stored. "Warehouse" is defined by the Century Dictionary thus: "A house in which wares or goods are kept; a storehouse." And the same authority defines storehouse: "A house in which things are stored; a building for the storing of grain, food-stuffs, or goods of any kind; a magazine; a repository; a warehouse; a store." Bishop, Statutory Crimes, section 293, defines the word "warehouse" as follows: "In popular language, and by the better opinion in legal, this word signifies an apartment or building for the temporary deposit of goods. Therefore, a cellar wherein they are kept, to be removed when wanted for sale, or a railroad depot for the reception of goods and passengers, is a warehouse." 1 Wharton, Criminal Law, section 794c, says the word "storehouse" is a wider term than warehouse, and includes a storeage for family as well as for business purposes. The definition of "corn-crib," as given by Webster's Dictionary, is "a crib for storing corn." The evidence on the trial showed that the building broken and entered was what is commonly called a "corn-crib." It was erected on the farm of the prosecuting witness and designed and used by him for the exclusive purpose of storing corn raised upon the farm, after it was husked. In the light of the foregoing definitions we are fully satisfied that the building in question was a "storehouse and warehouse" within the intent and meaning of the statute defining burglary, and was correctly so described in the information. In *Wilson v. State,* 24 Conn., 57, it was ruled that a banking house is a store, shop, or warehouse within the meaning of the statute making it burglary to break and enter a shop, store, or warehouse

of another with the intent to steal. (See *Hagan v. State*,
52 Ala., 373.)   In *Ray v. Commonwealth*, 12 Bush [Ky.],
397, it was decided that a granary built and used for keep-
ing and preserving farming implements, etc., was not im-
properly described in the indictment as a warehouse.  Under
the statute, the breaking and entering the building must
have been done in the night season in order to constitute
burglary.  It is insisted that there is a total failure of proof
to show that the offense laid in the information was com-
mitted in the night time.   The undisputed evidence is to
the effect that the prosecuting witness, Binford, was work-
ing near the crib on August 8 until night and it was then
undisturbed; that the next morning about daylight, Mr.
McGee, one of his neighbors, came over and waked Mr.
Binford, who arose, went out to the crib and discovered
that it had been broken open and some of the corn taken
therefrom.   It was further proven by the defendant's own
witnesses that Mr. Metz' horses and wagon, together with
the corn which was found in his possession the morning
after the crime was committed, were brought to his home
about 12 o'clock of the night of August 8.  The foregoing
evidence was sufficient to establish that the burglary was
committed during the night season.

The accused did not take the witness stand in his own
behalf.  It is argued that the court erred in not instructing
the jury that the defendant's neglect so to do created no
presumption against him.   By section 473 of the Criminal
Code it is provided: "In the trial of all indictments, com-
plaints, and other proceedings against persons charged with
the commission of crimes or offenses, the person so charged
shall, at his own request, but not otherwise, be deemed a
competent witness; nor shall the neglect or refusal to tes-
tify create any presumption against him, nor shall any ref-
erence be made to, nor any comment upon, such neglect or
refusal."   The defendant having availed himself of the
protection of the statute, he might have requested the court

to instruct the jury that no presumption of guilt arose from his failure to testify; but he did not request the court to so charge, and error cannot be successfully assigned upon the omission of the court to give such an instruction on its own motion.   This conclusion is no manner conflicts with the holdings of this court that in criminal prosecutions it is the duty of the court, whether requested or not, to present the issues to the jury by proper instructions.   Manifestly a charge is erroneous which has the effect to withdraw from the consideration of the jury an essential issue in the case.   But a trial court is not bound to instruct upon a special feature of a trial, like the failure of the prisoner to testify, unless so requested.

The fourth and fifth assignments of error, that the verdict is contrary to the third and fourth paragraphs of the instructions, require no special attention.   They are disposed of by what has already been said in this opinion.

Two instructions requested by the defendant were refused, which are the basis of the sixth and seventh assignments.   We are precluded from reviewing the defendant's requests to charge, since no exceptions were taken to them at the time of their refusal.   (*Baldwin v. State,* 12 Neb., 61; *Heldt v. State,* 20 Neb., 492.)

We discover no error in the fifth instruction given by the court on its own motion.   By it the court told the jury that a breaking essential to constitute the crime of burglary may be by any act of physical force, however slight, whereby any obstruction to entering is forcibly removed. This is in line with the rule stated by leading text-writers on criminal law, as well as the decisions of the courts of this country.   It was also applicable to the facts in the case at bar.

Exception was taken in the court below to the sixth paragraph of the charge to the jury, and the giving thereof is assigned for error.   The instruction is as follows:

" 6. If you believe from the evidence, beyond a reason-

able doubt, that soon after the burglary of the storehouse or warehouse of the said Jasper N. Binford and the larceny of the corn therefrom, portion of the said corn so stolen was in the exclusive possession of the defendant George Metz, you are instructed that this circumstance, if so proven, is presumptive, but not conclusive, evidence of the defendant's guilt, and you should consider this circumstance, if so proven, to your satisfaction, along with the other evidence in the case in arriving at your verdict, giving it such weight and effect as you think it entitled to, and giving the defendant the benefit of any reasonable doubt of guilt."

The foregoing was erroneous for more than one reason. By it the court assumed that a burglary and larceny had been committed. The accused, during the entire trial, strenuously insisted that such were not the facts, and it was prejudicial error for the court to assume as established the *corpus delicti*. True, that question was submitted to the jury for their determination by another instruction, but that did not cure the error indicated in the instruction quoted, since the jury would be left in doubt as to which instruction should guide them in their deliberations. (*Ballard v. State*, 19 Neb., 609.) The instruction under consideration is bad, for the reason it misdirected the jury as to the presumption arising from the possession of stolen property. In a prosecution for larceny, some of the courts say that the exclusive possession by the defendant of the property stolen recently after the theft, unexplained, is *prima facie* evidence of guilt. Other courts, including ours, lay down the doctrine that in larceny cases no such presumption exists, but that the effect to be given to the fact of possession of stolen property is solely for the jury to determine, when considered in connection with all the other facts and circumstances disclosed on the trial. (*Robb v. State*, 35 Neb., 285; *Dobson v. State*, 46 Neb., 250.) In *Robb v. State*, *supra*, the writer used this unfortunate expression, which is now withdrawn: "It is only where the

possession of goods recently stolen is unexplained that the presumption *prima facie* of guilt arises." From the general scope of the opinion in that case it is obvious that the court intended to, and did, decide that no presumption of guilt arises from the mere fact of possession of stolen property, but that the inference to be drawn from such fact is alone for the jury, when weighed in connection with all the evidence adduced on the trial. The presumption of guilt never arises from the mere possession of stolen property, unless the defendant has come into such possession recently after the theft, and such possession is unexplained, even in states where the rule of presumption prevails. Both of these elements are omitted from this instruction. The bare possession of stolen property is not, alone, presumptive evidence of the burglary. In burglary it is necessary that the breaking and entering be committed in the night-time, and the presumption will not be indulged that the breaking and entering were in the night season from the fact alone the defendant was found in possession of the fruits of the crime; but in prosecutions for burglary, like those for larceny, the effect to be given to the fact of possession is solely for the jury. (1 Wharton, Criminal Law, sec. 813; *People v. Gordon*, 40 Mich., 716; *People v. Beaver*, 49 Cal., 57; *People v. Hannon*, 85 Cal., 374; *Methard v. State*, 9 O. St., 363.) It is true, as suggested by the attorney general, that the sixth instruction in this case is almost identically the instruction given in *Whitman v. State*, 42 Neb., 841, which was approved by this court. In that case the point was not made that the trial court assumed that a burglary and larceny had been committed, nor was that feature of the charge reviewed. Again, the instruction in that case, as was said by RYAN, C., "confined the presumption which might be entertained to larceny of the goods themselves;" while in the case at bar the jury were told that the presumption might be indulged from the fact of possession of the stolen property that the defendant was

guilty of the burglary. It is obvious that the instruction that we have been considering is the more objectionable of the two. Nevertheless, the instruction in the Whitman case is contrary to the rule announced in *Robb v. State,* and *Dobson v. State, supra,* and in so far as the decision in *Whitman v. State* conflicts with the two cases mentioned it is overruled. It was error to give the sixth instruction, for which the case must be reversed. The trial judge was, doubtless, led to make this mistake by our prior decision.

The conclusion reached makes it unnecessary to examine the other assignments of error. The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.