THE STATE OF KANSAS v. LEONARD MOON.

No. 11,993.   (64 Pac. 609.)

1. BURGLARY—*Information Sufficient.* An information which in in all respects formally charges the accused with the offense of burglary as defined in section 64 of chapter 100, General Statutes of 1897 (Gen. Stat. 1899, § 2005), except that the crime is charged to have been committed in the daytime, and the particular act of breaking is alleged to have been "by forcibly pulling open a

51—62 KAN.

closed outer door of said dwelling-house,'' sufficiently charges the offense of burglary in the second degree.

2. ———— *Evidence Sufficient.* The evidence in the case examined, and held to sustain the verdict of the jury.

Appeal from Saline district court; R. F. THOMPSON, judge. Opinion filed April 6, 1901. *In banc.* Affirmed.

*A. A. Godard,* attorney-general, and *C. W. Burch,* county attorney, for The State.

*David Ritchie,* for appellant.

The opinion of the court was delivered by

ELLIS, J.: This was a prosecution for burglary with intent to commit rape. In the information it was averred that defendant did, ''in the daytime, break into and enter the dwelling-house of Joseph A. Bachofer, then and there situate, by *forcibly pulling open a closed outer door* of said dwelling-house,'' etc. It was also properly averred that a human being was then within said dwelling, and in all other respects the charge was sufficient. The jury found the defendant guilty of burglary in the second degree, and he was sentenced to the penitentiary for five years.

The first question presented for consideration is whether the verdict is sustained by the evidence. The defendant is described by the witnesses as a tramp, having irregular and temporary employment in the neighborhood of Bachofer, a Saline county farmer, who, with his wife and two children, the elder of which was but three years old, lived in a creek bottom quite a distance away from, and not within sight of, the other houses in the neighborhood. The farmer's wife was not acquainted with the defendant, and had never spoken to him. He came to the place just as

her brother was ready to leave, and for the purpose of getting him away told the brother that the latter would be needed very soon at a neighbor's farm, where they were thrashing. Defendant then pretended to depart, taking the road toward Salina, but as soon as the brother, whom he believed to be the woman's husband, was out of sight he returned, and coming up to the house where the woman and her two little children were (the door of the room being open and its aperture being closed by a screen door held in place by coil springs) tried to engage her in conversation. Meeting with no encouragement, he then inquired if the man who had just driven away was her husband, and was informed that he was her brother. He then asked where her husband was, and in reply was told that he was out in the field. Being thus assured that the woman was alone with her children, he asked if he might come in, and receiving an abrupt negative reply, he asked if those present were the only children she had. Upon being told that they were, he asked if she had any larger ones, and being told that she had not, he again asked to be admitted, to which the woman replied that she did not want him or anyone else to come in. He then put up his arm to shade his eyes, and after standing up to the screen door and looking through the apartment thoroughly, said to the woman that she would not care if he came in; that it was her husband that went away, and if it was not, he would not see them anyway. The children intuitively became frightened and clung to her dress, and she again forbade defendant to enter, but he pulled open the door and boldly entered. The children screamed with terror, and she, dragging them by her skirts, hastened to a cupboard near by and procuring a loaded

revolver, leveled it at his head, and told him to go out, or she would shoot. He was advancing toward her and, according to her testimony, was within five feet of her at the time. He told her not to shoot—that he would go, and he did go. As soon as he left the premises the woman took the children and in great fright fled from the house to find her brother, to whom she made known what had occurred. The defendant was arrested soon afterward, and, before he was informed of the charge against him, said that he knew he was "wanted for insulting that woman." The defendant, as a witness in his own behalf, denied nearly all these statements of the woman, but we think the jury were justified in believing them to be true.

Counsel for appellant insists that this testimony tends to show that defendant's purpose in entering the house was to prevail over the woman by solicitation, and that it fails to show an intent to ravish her. As before stated, the witnesses describe the defendant as having the appearance of a tramp, which fact the prosecution regards as important in determining whether the defendant had any reason to believe that the woman would be likely to yield to the blandishments of such a repulsive creature as he then appeared to be.

By appellant's counsel, we are cited to *The State v. Scholl*, 32 S. W. (Mo.) 968; *Carson v. The State*, 24 S. W. (Tex. Crim. App.) 409; *Fields v. The State*, 24 S. W. 907; *Kelley v. The State*, 22 S. W. (Tex.) 588; *State v. Owsley*, 102 Mo. 678, 15 S. W. 137; *State v. Biggs*, 61 N. W. (Iowa) 417; *White v. The State*, 36 N. E. (Ind.) 275; *Mitchell v. The State*, 32 Tex. Crim. R. 479, 24 S. W. 280; *The State v. Frazier*, 53 Kan. 87, 36 Pac. 58; *Thompson et al. v. The People*, 96 Ill. 161. We have examined these authorities, and think each

case is clearly distinguishable in its facts from the case at bar.  It would be idle to discuss them here.

It may be admitted that, as the case appears from the record, the jury might properly have hesitated to convict—that it looks like a border case ; still they saw the witnesses and the defendant, and heard them testify in the case.  The court below, with these advantages, which we do not possess, approved the finding of the jury.  In view of these considerations, this court cannot say that the testimony does not sustain the verdict.  In the fear that on account of the fiendish conduct of the defendant, of his apparent lack of all the better elements of manhood, of his disregard of the rights of the helpless, of his utter obliviousness of the duties and disposition to ignore the amenities which all men owe to women, he might be exposed to the danger of an uncontrollable prejudice on the part of the jury, we have carefully scrutinized the record for the purpose of trying to discover any evidence thereof, and we are convinced that he had a fair trial.

It is also contended that the information does not state facts sufficient to charge the defendant with burglary in the second degree.  Counsel for appellant most ingeniously argues that the offense charged is burglary in the third degree.  He admits that the precise words of the statute need not be used, but he contends that " forcibly pulling open a closed outer door," while it constitutes a breaking, does not constitute such a breaking as is requisite under sections 64 and 65 of chapter 100, General Statutes of 1897 (Gen. Stat. 1899, §§ 2005, 2006), which are as follows :

"Sec. 64.  Every person who shall be convicted of breaking into and entering, in the night-time, the dwelling-house of another, in which there shall be at the time some human being, with intent to commit

some felony or any larceny therein, either : *First*, by forcibly bursting or breaking the wall, or any outer door, window or shutter of a window of such house, or the lock or bolt of such door, or the fastening of such window or shutter ; or, *second*, by breaking in any other manner, being armed with some dangerous weapon, or with the assistance and aid of one or more confederates then actually present, aiding and assisting ; or, *third*, by unlocking an outer door, by means of false keys, or by picking the lock thereof, shall be adjudged guilty of burglary in the first degree.

"SEC. 65. Every person who shall be convicted of breaking into a dwelling-house in the daytime, under such circumstances as would have constituted the crime of burglary in the first degree if committed in the night-time, shall be deemed guilty of burglary in the second degree."

The defendant's counsel urges that the legislature intended to provide that, in order to commit the offense of burglary, as defined in section 64, the accused must use a greater degree of force in the breaking of an outer door than is ordinarily necessary to constitute a breaking in the crime of burglary. The argument is plausible, but not sound. If the legislature had intended to provide for a different kind of breaking than that which was then generally recognized as sufficient to constitute a felonious breaking in burglary, it is presumed that it would have said so in plain and unequivocal language. The addition by statute of the term "forcibly" only expresses what was implied by the term "breaking" at common law. (*Ducher v. The State*, 18 Ohio, 308, 316, 317.) Pushing open a closed door constitutes an actual breaking. (*The State of Iowa v. Connor*, 95 Iowa, 485, 64 N. W. 295, and cases cited.) To break a door it is not necessary to injure the door or its fastenings. (5 A. & E. Encycl. of L., 2d ed., 45, 46, and cases cited.) The opening

of a closed· outer door with felonious intent consti-
tutes a burglarious breaking. ( *Timmons v. The State*,
34 Ohio St. 426 ; *The State of Iowa v. Reid*, 20 Iowa,
413, 421 ; *Sparks v. The State*, 29 S. W. (Tex. Crim.
App.) 264 ; *The State v. Moore*, 117 Mo. 395, 22 S. W.
1086 ; *Simms v. The State*, 136 Ind. 358, 36 N. E.
278 ; *Frank* [a slave] *v. The State*, 39 Miss. 705 ; *Metz
v. The State*, 46 Neb. 547, 65 N. W. 190.)

The doctrine of these cases has been approved and
followed by this court. ( *The State v. Jansen*, 22 Kan.
498 ; *The State v. Groning*, 33 id. 18, 5 Pac. 446 ; *The
State v. Cash*, 38 id. 50, 16 Pac. 144 ; *The State v.
Powell*, 61 id. 81, 58 Pac. 968.)

The breaking alleged and proved in this case would
have been sufficient under the common law, if it had
occurred in the night-time, to have justified a convic-
tion for burglary. (5 A. & E. Encycl. of L. 44, and
cases cited.)

In *The State v. Connor*, supra, it appeared that the
keeper of the store was sitting out in front thereof,
the front door being open ; that the permanent door
at the rear of the room was also open, but there was
a wire-screen door which was closed. This door was
not fastened with a latch, but was hung on spring
hinges, which served to keep it closed. The accused
opened this door and entered the store, and that was
held to be a sufficient "breaking," under the statute.
In *Timmons v. The State*, supra, the "breaking" con-
sisted in pushing open a closed but unfastened tran-
som that swung horizontally on hinges over the outer
door of the dwelling, and it was held sufficient. See,
also, *Dennis v. People*, 27 Mich. 151 ; *Brown's Case*, 2
East Pl. Cr. 487. "A breaking necessary to consti-
tute burglary may be any act of physical force, how-
ever slight, by which the obstruction to entering is

forcibly removed." (*Metz v. The State*, 46 Neb. 547, 65 N. W. 190; *The State v. Wilson*, Coxe [N. J.] 439, s. c. 1 Am. Dec. 216.)

It is evident that in enacting our statute against burglary the legislature intended to make it a greater offense burglariously to break and enter a dwelling-house than it is thus to break and enter any other building. That such was the intent is shown by section 67, wherein it is provided, in effect, that if one shall make an entry by day or night "in such manner as not to constitute any burglary as hereinbefore specified, with the intent to commit a felony or any larceny, or being in the dwelling of another shall commit a felony or any larceny, and shall in the night-time break" out of said house, he shall be adjudged guilty of burglary in the second degree.

It will be remembered that, under the common law, to break out of a house did not constitute the crime of burglary. Sections 68 and 69 are further illustrations of such legislative intent, and section 70 specially provides, in view of the severity of the penalties which are prescribed for offenses committed in and against the dwelling-house, that no building shall be deemed a dwelling-house within the meaning of the foregoing provisions, unless it "be joined to, immediately connected with, and a part" thereof. If we were to construe the statute in accordance with the contention of the learned counsel, the mansion-house would have precisely the same degree of protection in all ordinary cases as is accorded by our laws to the stable and the smoke-house.

We conclude, therefore, that the legislature intended to provide that when a dwelling-house contains a human being it should be regarded as more sacred and entitled to a greater degree of protection under our

Topeka v. Wood.

law than is the shop, the store, or the granary, and·
it intended to and did enact that the man who, with
felonious intent, forcibly breaks and enters that sacred
retreat should have meted out to him a penalty com-
mensurate with the enormity of his crime. ( *The State
v. Cash*, supra.)

In our opinion, the information charges, in substan-
tial compliance with the requirements of the statute,
the precise offense of which the appellant was con-
victed, and the judgment of the court below will be
affirmed.