No. 38,074

State of Kansas, *Appellee*, v. Emmett Gatewood, *Appellant*.

(221 P. 2d 392)

Opinion filed August 23, 1950.

*Elmer W. Columbia,* of Parsons, argued the cause, and *John B. Markham* and *Herman W. Smith, Jr.,* both of Parsons, were with him on the briefs for the appellant.

*J. Logan Shuss,* county attorney, and *John F. Amos,* assistant county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, and *Willis H. McQueary,* assistant attorney general, were with them on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: The defendant was charged and convicted of burglary in the first degree and was sentenced pursuant to the habitual criminal act.

The defendant appeals. The terms of the sentence are not involved. Appellant's principal complaint is the evidence did not

establish the elements of burglary in the first degree. The burglary statute, G. S. 1935, 21-513, insofar as material, reads:

"Every person who shall be convicted of breaking into and entering, in the nighttime, the dwelling house of another, in which there shall be at the time some human being, with intent to commit some felony, or any larceny therein, either—*First,* by forcibly bursting or breaking the wall, or any outer door, window or shutter of a window of such house, or the lock or bolt of such door, or the fastening of such window or shutter . . . or, *third,* by unlocking an outer door, by means of false keys, or by picking the lock thereof, shall be adjudged guilty of burglary in the first degree."

The pertinent part of the information charged the defendant "did . . . unlawfully . . . break and enter in the night time of said day into a dwelling house of another in which there was a human being, to-wit: Mrs. Della Haynes Brown, by forcibly pulling open a closed outer door and entering into said dwelling house [description] owned and occupied by Della Haynes Brown . . . with the intent on the part of him to commit a larceny therein. . . ."

It is conceded no property was stolen. It, however, should be observed appellant was not charged with burglary and larceny under G. S. 1935, 21-524 but with burglary in the first degree as defined by G. S. 1935, 21-513. Material portions of the state's evidence, in substance, disclose:

This incident occurred at the home of the owner; the house was located on the north side of the street and faced south; the owner and a roomer by the name of Grover Cherry were in the dwelling house at the time; after both had retired for the night the owner, occupying a front southwest bedroom, was awakened by the slamming of a front screen door; she went to the door and soon saw a man running to the back of the house along the west side; there are two kitchens in the house, one on the northeast corner, the other on the northwest corner; the owner of the dwelling called to Mr. Cherry, who was sleeping in the northeast kitchen; Cherry arose; by that time the man had entered the back screened porch which was on the northwest corner of the house; the only outside entrance to the screened porch was a screen door; it was kept unlocked in order that meter men might enter when appearing to make their readings; a door and window were between the northwest kitchen and the porch; both occupants observed a man on the back screened porch using a flashlight; they were unable to identify him at that time by reason of the fact he was throwing the flashlight into the northwest kitchen; the man then left the porch and went to an outside screen door at

the north and rear of the residence; that door entered the northeast kitchen; the inside door at that place was glass paneled; the man attempted to unlock the screen door at that place but was unable to do so; he left momentarily and on his return succeeded in unlocking and opening that outer screen door; he then attempted to unlock the glass paneled door but was unable to do so as a key had been left in the lock on the inside and was turned crosswise; Cherry was standing approximately one foot from the man at that particular time and watched him for three or four minutes while he was trying to unlock the glass paneled door; although it was quite dark there was sufficient light outside for Cherry to identify the appellant; being unable to open the glass paneled door appellant went to the east side of the house and tried various window screens there; he made a hole in one of those screens but was unable to raise the hook; in the meantime the police had been called; one officer had been stationed in the alley north of the premises; the other officer parked his car in front and to the southeast of the building; appellant ran from the east side of the building to the back of the house; the officer who had been stationed in the north alley came into the yard and saw a man running west behind the house and then turn south toward the front along the west side of the house; as the man came to the south the officer in front turned the spotlight on him and he sat down on the front porch and dropped his face into his hands; it was here he was apprehended by the officers.

Appellant contends the evidence did not disclose a "breaking into and entering" of the dwelling house. We shall first consider the contention as it pertains to the screened in porch. Was that porch a part of the dwelling house? The porch was joined to the building and was connected to the northwest kitchen. A door and a window were in the wall between the kitchen and porch. The porch walls were of wooden construction except for a narrow space which appears to be approximately two and one-half or three feet wide between the boarded portions. That space was screened. The only outside entrance to the porch was by way of a screen door. It was kept unlocked in order that meter men might enter to make their readings. G. S. 1935, 21-519 provides:

"No building shall be deemed a dwelling house or any part of a dwelling house, within the meaning of the foregoing provisions, unless the same be joined to or immediately connected with, and a part of, a dwelling house."

The porch apparently was used for dwelling house purposes. A washing machine, an important part of household equipment, was on

the porch, as well as three boxes of children's toys, a tricycle and scooter. In *State v. Scott*, 162 Kan. 571, 178 P. 2d 182, we held:

"In a prosecution for burglary in the first degree under G. S. 1935, 21-513, the requirement of a human being in the dwelling house at the time is satisfied where the evidence discloses human beings were at the time occupying a large, furnished, railed and roofed but otherwise open porch, joined to and made a part of the dwelling house, which was customarily used during the summer months as a part of the dwelling house." (Syl. ¶ 2.)

We think that by virtue of G. S. 1935, 21-519, and the use the screen porch served in the instant case, it constituted a part of the dwelling house. The dwelling house was, therefore, entered.

A close examination of appellant's brief indicates he is not really contending the porch was not a part of the dwelling house. One of his principal contentions is there was no evidence he broke into it. The answer depends upon what constitutes "breaking into."

We previously indicated the outside screen door entrance to this porch was unlocked. Appellant was charged with burglary "by forcibly pulling open a closed outer door." This court early held proof of that precise charge is sufficient to establish the offense and that it is not necessary there should be any additional breaking to constitute burglary. (*State v. Moon*, 62 Kan. 801, 64 Pac. 609.) Pushing open a closed door constitutes an actual breaking and the opening of a closed outer door with felonious intent is sufficient to constitute burglarious breaking. (*State v. Moon*, supra, p. 806-808, and cases there cited; *State v. Herbert*, 63 Kan. 516, 520, 66 Pac. 235.) This principle is in harmony with well established doctrine. (9 Am. Jur., Burglary, §§ 8-12, incl.; 12 C. J. S., Burglary, § 3 (b.); 2 Wharton's Criminal Law, 12th ed., § 973; and anno. 23 A. L. R. 112, 118.)

Counsel for appellant argue the evidence did not show the screen door was closed. The argument is based primarily on the italicized portions of the following questions and answers, to wit:

"Q. Was there a door on that screened-in porch? A. Yes, sir.
"Q. And what kind of a door was it? A. It is a screen door.
"Q. *Do you ordinarily keep that door locked, there?* A. *No.*
"Q. *It is left open?* A. *Yes.*
"Q. For what reason? A. For the meter readers."

We think appellant's contention is too technical. The witness in answer to the particular wording of the above questions clearly appears to have intended to distinguish between a locked and an unlocked door rather than between a closed and an open door. This

apparently was also the interpretation placed on the evidence by counsel for appellant who tried the case (not his present counsel). We find no motion to release appellant at the conclusion of the state's evidence on the ground the screen door was standing open when appellant entered. There is no evidence whatever to that effect. The mere fact a screen door is not locked does not meant it is not closed. If a screen door is left open there, of course, is no purpose in having it. The witness merely meant to indicate it was unlocked in order that meter men might enter when arriving to make their readings and not that the door was left standing open.

The entrance door to the screen porch, however, was not the only "outer door" the appellant broke. The back, or north, screen door to the northeast kitchen was also broken. The screen to that door was not only broken but a hook which fastened the door was lifted and the screen door was opened. Had there not been an additional wooden door the opportunity for appellant to enter his entire body would have been complete. As it was he could enter only partially. He did enter his hand and an arm, at least partially, when he unsuccessfully attempted to unlock the inside door with a key. In 9 Am. Jur., Burglary, § 16, it is said:

"Literally, entry is the act of going into the place after a breach has been effected, but the word has a broader significance in the law of burglary, for it is not confined to the intrusion of the whole body, but may consist of the insertion of any part for the purpose of committing a felony. An entry is accomplished by putting through the place broken the hand, the foot, or any instrument with which it is intended to commit a felony."

See, also, 2 Wharton's Criminal Law, 12th ed., § 973, and notes p. 1277.

Suppose an owner of a dwelling, while leaving the premises in a hurry, left some articles between the doors, as is frequently done, and had locked the screen door, would we say there had been no breaking or entering if the screen door were unlocked and the articles stolen? We do not think so. Suppose an inside door were left open for ventilation in the extreme heat of summer and a screen door, as here, were broken and the intruder attempted to reach a purse, diamonds or jewelry on a table without completely entering, would we say the offense of burglary with intent to commit larceny had not been established? We think not.

Appellant next argues there was no evidence appellant broke into the dwelling "with intent to commit *larceny*." (Our italics.)    It

may be conceded there was no direct proof of appellant's intent. It is also true the statute makes "intent to commit some felony, or any larceny therein" an element of the offense of burglary in the first degree.

Intent is a state of mind existing at the time a person commits an offense. If intent must have definite and substantive proof it would be almost impossible to convict, absent facts disclosing a culmination of the intent. The mind of an alleged offender, however, may be read from his acts, conduct and inferences reasonably to be drawn therefrom. Frankness requires it be stated there is not complete unanimity of opinion among the courts relative to whether the intent to commit *larceny,* in connection with a burglary charge, must be affirmatively shown to exist as distinct from some other offense that might have been intended. In *Simpson v. State of Florida,* 81 Fla. 292, 87 S. 920, it was held such intent must be affirmatively shown by direct or circumstantial evidence. In *State v. Riggs,* 74 Minn. 460, 77 N. W. 302, relied on by appellant, a divided court held the evidence insufficient to disclose an intent to commit larceny. That decision is discussed in our own case of *State v. Van Gilder,* 140 Kan. 66, 33 P. 2d 936. There was some positive evidence in the Minnesota case the defendant did not intend to steal but to buy liquor at the place he entered. In the Van Gilder case we held:

"In a prosecution for burglary, where the breaking and entering was clearly established and not controverted, the intent to steal may be sufficiently established by inference fairly deducible from all the circumstances and need not be established by direct proof." (Syl. ¶ 1.)

For purposes of accuracy it should be conceded there was some rather strong circumstantial evidence of intent to commit larceny in our Van Gilder case. In the opinion we cited *State v. Woodruff,* 208 Ia. 236, 225 N. W. 254. Numerous cases are cited in a well considered opinion in the Iowa case holding the clear weight of authority to be that an unexplained breaking and entering of a dwelling house in the nighttime is in itself sufficient to sustain a verdict that the breaking and entering was done with the intent to commit *larceny* rather than some other felony. The Iowa case contains quotations from some of the many cases so holding, which need not be repeated here. The fundamental theory upon which the inference of intent to commit *larceny* is based, absent evidence of other intent or an explanation for breaking and entering, is that the usual object or purpose of burglarizing a dwelling house at night is theft. We are impressed with the soundness of the rule.

Moreover in the instant case we cannot say there were no circumstances from which the jury reasonably might infer appellant intended to commit larceny. Appellant sought to make entry through various doors and windows. He used his flashlight on the screen porch. It is reasonable to infer he found nothing there he desired. He then flashed the light all over the adjoining kitchen. It reasonably may be inferred he was endeavoring to ascertain whether the kitchen, or any other portion of the dwelling he could see, contained something he desired. He may have seen something. Finding entrance into the kitchen impossible from the screen porch he made attempts to enter at other places. We think it cannot be said the verdict must be set aside on the ground a prima facie case of intent to commit larceny was not established.

Appellant asserts the trial court erred in an instruction given and in failing to give another. We do not find an objection was made to the instruction given or that an instruction was requested on any other matter. Furthermore neither of the alleged errors was raised on the motion for a new trial. Under these circumstances appellant is in no position to raise these objections initially on appeal. (*State v. Gillen,* 151 Kan. 359, 363, 99 P. 2d 932; *State v. Leigh,* 166 Kan. 104, 109, 199 P. 2d 504.)

It is also urged the trial court erred in the admission of evidence. Except for one item of evidence which will be treated presently the alleged improper admission of evidence likewise was not raised in the motion for a new trial and cannot be urged first on appeal. In fairness to able counsel for appellant we probably should say they did not represent appellant at the trial. Manifestly, however, that fact cannot operate to change established rules of appellate review. The one alleged error pertaining to the admission of evidence raised in the motion for a new trial was the admission of an east window screen into which appellant had punched a hole but had not been able to open. It is true the charge was he had forcibly pulled open a closed outer door, not a window. The evidence was introduced as a part of appellant's entire conduct and as tending to show his persistent intent. Its admission did not constitute reversible error.

One of the grounds for a new trial, supported by an affidavit, pertained to alleged newly discovered evidence. It was contended such evidence would disclose certain facts testified to by a police officer were physically impossible and therefore could not have been anticipated. Studious examination of the testimony of that witness indicates it was not impossible for him as he neared the dwelling

house from the rear, to have seen appellant running west at the rear, or behind, the dwelling house and turn south on the west side thereof, as the officer testified. It cannot be said to be newly discovered evidence which the exercise of reasonable diligence would not have revealed.

It is also argued the evidence was insufficient to identify appellant as the person who committed the burglary. A detailed examination of the record convinces us that notwithstanding the various arguments presented by appellant in this respect, and some of them are quite persuasive, the question of appellant's identity depended upon the credence and weight the jury might attach to the state's evidence. The question was properly submitted.

The record of the trial presented here does not permit a reversal of the judgment. The judgment is affirmed.