(601 P.2d 375)

No. 50,576

STATE OF KANSAS, *Appellee,* v. DANNY D. ACHESON, *Appellant.*
Petition for review denied December 5, 1979.

Opinion filed October 15, 1979.

*Donald F. Hoffman,* of Dreiling, Bieker & Kelley, of Hays, for appellant.

*Larry D. Ehrlich,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before SWINEHART, P.J., ABBOTT and PARKS, JJ.

ABBOTT, J.: This is a direct appeal from a conviction on two counts of aggravated burglary contrary to K.S.A. 21-3716.

In July and August of 1977, the defendant, Danny D. Acheson, was charged in three separate cases with various offenses arising on four different dates in Russell County. He was first charged on July 1, 1977, with one of the two aggravated burglary charges involved in this case that allegedly occurred on June 5, 1977. On August 24, 1977, he was charged with two counts of aggravated burglary (one of which is involved in this case), one count of aggravated sodomy and one count of criminal damage to property, all based upon separate incidents that occurred on August 7, 1976, and May 4, 1977. Also, on August 24, 1977, defendant was charged in a separate case with one count of rape, one count of aggravated burglary and one count of criminal damage to property based on an incident that occurred September 26, 1976. The State moved to consolidate all of the offenses for trial. The trial court agreed to consolidate the two aggravated burglary charges arising out of the incidents that occurred on August 7, 1976, and June 5, 1977. Trial was held to a jury and defendant was convicted on both counts. Defendant subsequently entered guilty pleas to the remaining aggravated burglary charge and to the rape charge. In turn, the State dismissed the remaining charges.

The defendant was sentenced, and after receiving a report from the Kansas Reception and Diagnostic Center the sentences were reduced on the defendant's motion to a minimum term of not less than two years and a maximum term of not more than twenty years on each count. The two aggravated burglary convictions were to run concurrently, and consecutively with the two plea convictions that were to run concurrently.

Defendant raises four issues on appeal which we will consider in the following order:

1. Did the trial court err in consolidating two of the aggravated burglary charges for trial?

2. Was the defendant so intoxicated that he could not form the "specific intent to commit a felony" necessary to sustain a conviction for aggravated burglary?

3. Does sufficient evidence exist to support the jury's guilty verdicts?

4. Does PIK Crim. 54.01 unconstitutionally shift to the defendant the burden of proof on the issue of intent?

The trial court did not abuse its discretion in consolidating the aggravated burglary counts. Defendant contends that intoxication was a defense in one count but not in the other, and that the consolidation effectively deprived him of his "legal advantage" (the intoxication defense) referred to in *State v. Toelkes,* 139 Kan. 682, 684, 33 P.2d 317 (1934). Whether a defendant may be tried on all separate charges at one trial rests in the sound discretion of the trial court, and its holding will not be disturbed on appeal absent a clear showing of abuse. *State v. Ralls,* 213 Kan. 249, 256-57, 515 P.2d 1205 (1973). The test to be applied is:

"When all of the offenses are of the same general character, require the same mode of trial, the same kind of evidence and occur in the same jurisdiction the defendant may be tried upon several counts of one information or if separate informations have been filed they may be consolidated for trial at one and the same trial. [Citations omitted.]"

The first incident occurred on August 7, 1976. Police conducted an investigation and obtained a set of fingerprints off a drinking glass used by the intruder. Two days later, the complainant spotted the defendant in a local supermarket and informed the police. When defendant was confronted, he denied the accusation and offered an alibi; no charges were filed against him, his claimed alibi witnesses were not interviewed, and his fingerprints were not compared with those obtained from the drinking glass. When defendant was arrested after having been found in the second apartment, his fingerprints were taken and later compared with those taken the preceding summer from the drinking glass. When the fingerprints matched, charges were brought against defendant for the August 7, 1976, incident.

The evidence presented on both charges was separate, distinct, uncomplicated, and uninvolved. The evidence was readily referable to each count of the information. Both crimes, though ten

months apart in time, occurred in the same duplex building during early morning hours, involving young female subjects who were alone in their apartments, and entry was gained through the same type of bedroom window. Both victims under the circumstances witnessed by them at the time feared that they were intended rape victims. There was evidence in both instances that the defendant apparently had been drinking, and identity of the defendant was not an issue in either case. Furthermore, defendant's position that his intoxication defense in the second incident was prejudiced by its consolidation with the first episode is untenable in light of *State v. Hacker,* 197 Kan. 712, 713-14, 421 P.2d 40 (1966), *cert. denied* 386 U.S. 967 (1967). There, the Court approved the consolidation of five counts of robbery over the defendant's protests that the charges involved different defenses, different victims, and different witnesses. Likewise, in *State v. Adams,* 218 Kan. 495, 505-06, 545 P.2d 1134 (1976), the Court upheld the consolidation of three separate incidents at trial since in each incident an aggravated burglary occurred and sex was the underlying motivation. The trial judge here held a hearing on the State's motion to consolidate, took the matter under advisement and rendered his decision. Trial judges are vested with broad discretion in determining whether to consolidate criminal charges for trial, and absent an abuse of that discretion a trial judge's decision to consolidate will not be disturbed on appeal. No abuse of discretion sufficient to warrant reversal of the trial court is found within the record.

Defendant further claims that in the second burglary his state of voluntary intoxication prevented him from forming the requisite specific intent to rape. Defendant's intoxication claim is based on the evidence that defendant was discovered "passed out or sleeping" on the floor, partially beneath a bed. The young female occupant of the premises testified that she had been in that bed, but got up and went into another room, turned on the lights and watched television for an extended period of time. When she returned to her bedroom, she discovered the defendant, clad in dark socks, a blue T-shirt and a pair of white fishnet jockey shorts, lying beneath her bed and she called the police. Defendant was slow to respond to the police officers. He told them that he had been drinking and could not remember where he was, although he called Officer Gary Richey by name. The officers then carried

him to the living room and later, outside the house after defendant said he felt sick. Once outside, defendant did not vomit, but he either passed out or laid on the ground in a quiet state for a few minutes. The investigating officer noted in his investigation report that defendant smelled of alcohol and had been drinking, although at trial he testified that defendant had not been drunk. While outside, defendant denied several times knowing where his trousers and shoes were located before finally telling the officers where they were folded and stacked behind the apartment building. Defendant also gave officers a fictitious name.

Officers testified at trial that defendant's means of entrance into the bedroom was a window approximately six feet above ground level. Officer Gary Richey testified that to gain entry through the window a person would have to pull himself up approximately five and a half to six feet. In *State v. Sanders,* 223 Kan. 550, 575 P.2d 533 (1978), the Court found insufficient evidence of intoxication when at times the defendant was alert, recognized officers and called them by name, and demonstrated physical dexterity. Here, defendant called Gary Richey by name and showed dexterity at the time of the break-in by climbing through the window. The dexterity necessary to climb through the window is not consistent with intoxication. In *State v. Miles,* 213 Kan. 245, 246, 515 P.2d 742 (1973), the Court declined to find that defendant's intoxication negated his specific intent when the attending officer did not believe that defendant "did not know what was going on." Here, the record disclosed that, prior to scaling the side of the victim's house, defendant folded and stacked his clothes and hid them behind the house. He also recognized Officer Richey, calling him by name, and used a fictitious name in identifying himself to the officers.

Under the facts presented, the issue as to defendant's intoxication defense was a question for the jury (*State v. Miles,* 213 Kan. at 246), and the jury was properly instructed on the issue of voluntary intoxication. PIK Crim. 54.12. Considering all of the evidence favorable to the State, as our scope of review obliges us to do, we conclude that the evidence was sufficient to negate a voluntary intoxication defense and the jury's determination of that issue will not be disturbed on appeal.

Defendant's third argument essentially states that the guilty verdicts for aggravated burglary were not supported by substan-

tial competent evidence, because the State did not show that words of a sexual nature had been spoken by defendant, nor that a physical attack had been made upon either woman, nor that defendant conveyed in any other manner that the purpose of his intrusion was rape. This alleged lack of evidence, defendant contends, should have prevented the jury from finding a specific intent to commit rape.

In *State v. Gatewood,* 169 Kan. 679, 221 P.2d 392 (1950), the Kansas Supreme Court specifically discusses the method of proving the element in the offense of burglary of "intent to commit some felony, or any larceny therein" at 684:

"Intent is a state of mind existing at the time a person commits an offense. If intent must have definite and substantive proof it would be almost impossible to convict, absent facts disclosing a culmination of the intent. The mind of an alleged offender, however, may be read from his acts, conduct and inferences reasonably to be drawn therefrom."

The sufficiency of the evidence to sustain a verdict of guilty when questioned on appeal is that the evidence is sufficient if a rational trier of facts could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia,* ____ U.S. ____, 61 L.Ed.2d 560, 99 S.Ct. 2781 (1979); *State v. Mitchell,* 3 Kan. App. 2d 635, 599 P.2d 1025 (1979). Moreover, appellate courts look only to the evidence in favor of the verdict, they do not weigh the evidence; and if the essential elements of the charge are sustained by any competent evidence, the conviction stands. *State v. Smolin,* 221 Kan. 149, Syl. ¶ 6, 557 P.2d 1241 (1976).

There is little question that a reasonable inference of guilt may be drawn from defendant's conduct in the second incident. Defendant entered the victim's bedroom in the early hours of the morning after removing his trousers and shoes, leaving them outside. There is less evidence of intent to rape in the first incident since defendant had not removed his clothing. There is still sufficient evidence, however, to support a reasonable inference of defendant's intent to rape. Defendant again in the early morning hours entered the home of a single woman in his neighborhood. He accidently awakened his victim when he knocked over a trash can. From the circumstances as they appeared to her, she believed, and testified, that either she was going to be raped or killed. The defendant sat on her bed, and when she screamed he put his hand over her mouth and told her

not to scream and to turn the lights out (she had turned them on when he entered the window). He asked her if anyone else was present in the house and expressed doubt when she said there was not. The defendant then left the bed and closed the bedroom door; the victim screamed again and continued to scream until he again covered her mouth with his hands with sufficient force that she could not breathe through her mouth. The jury was not obligated to believe defendant's story. In disbelieving his story, it well may have considered that he gave an alibi when first confronted by the police and that he lied to the victim when he said he was not a resident of Russell. It is reasonable to assume that when the victim awakened it might have thwarted defendant's intent to attack since he had lost the element of surprise. Once confronted by a conscious victim who could identify him, defendant lied about his intentions in entering the house and, upon leaving the home, kissed her. The jury could also properly consider the evidence of the second offense to show motive, intent and absence of mistake or accident.

To buttress its contention that very little circumstantial evidence of intent to rape is required to constitute sufficient evidence of felonious intent to sustain a burglary conviction, the State cites two earlier Kansas cases. In *State v. Moon,* 62 Kan. 801, 64 Pac. 609 (1901), a conviction of burglary with intent to rape was upheld when the defendant forcibly pulled open a closed outer door of a dwelling house in which a married woman and her children were present. The defendant talked with her, but did not touch her or make sexual advances. The defendant left after the frightened woman pulled a gun and ordered him off the premises. In *State v. Smit,* 184 Kan. 582, 337 P.2d 680 (1959), the Supreme Court upheld a burglary conviction although no intent was specified. A victim in *Smit* was awakened at 4:30 a.m. by the defendant who was pulling the bed sheets off her. The victim screamed, and the defendant ran down the hall and out of the house. No threats or sexual advances were made. The defendant even testified at trial that he did not intend to rape the victim. See also *State v. Arnold,* 1 Kan. App. 2d 642, 573 P.2d 1087 (1977), *rev'd on other grounds* 223 Kan. 715, 576 P.2d 651 (1978).

Admittedly, all of the evidence in this case is circumstantial on the issue of defendant's intent to rape his victims, but when the evidence and all reasonable inferences to be drawn therefrom are

viewed in a light most favorable to the State, as they must be, a rational person could have found proof of guilt beyond a reasonable doubt.

After the briefs were filed in this case, the defendant requested and was granted permission to file a supplemental brief in which he attacks the constitutionality of an instruction to the jury that was taken verbatim from PIK Crim. 54.01 and reads: "There is a presumption that a person intends all the natural and probable consequences of his voluntary acts. This presumption is overcome if you are persuaded by the evidence that the contrary is true." The defendant did not object to the giving of the instruction at trial, but now contends it was "clearly erroneous" and thus challengeable by reason of K.S.A. 60-251(*b*), even though there had been no contemporaneous objection. The "clearly erroneous" question becomes moot if the instruction is constitutional, thus we turn to the constitutional question.

Defendant relies principally on the recent holding of the United States Supreme Court in *Sandstrom v. Montana*, ___ U.S. ___, 61 L.Ed.2d 39, 99 S.Ct. 2450 (1979) to support his position that the instruction is unconstitutional. In *Sandstrom*, the United States Supreme Court determined that in a case in which intent is an element of the crime charged, a one-sentence instruction informing the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" violated the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt in violation of *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed.2d 508, 95 S.Ct. 1881 (1975). The Court found two flaws of constitutional magnitude in the one-sentence instruction: (1) The jury might have interpreted the instruction as creating a conclusive presumption on the issue of intent once convinced of the facts triggering the presumption, or (2) the jury might have viewed the instruction as shifting the burden of persuasion on the issue of intent to the defendant "unless the defendant proved the contrary by some quantum of proof which may well have been considerably greater than 'some' evidence . . . ." *Sandstrom*, 99 S.Ct. at 2456.

As we read *Sandstrom*, it appears to us that it is permissible to require the defendant to come forth with some evidence so long as the jury is aware that the presumption is not conclusive and

that the ultimate burden of persuasion on the issue of intent is not shifted to the defendant. See also *Ulster County Court v. Allen,* ___ U.S. ___, 60 L.Ed.2d 777, 99 S.Ct. 2213 (1979). However, Montana Rules of Evidence 301(b)(2) requires the presumption at issue to be overcome by a preponderance of evidence contrary to the presumption, a burden greater than a permissive inference.

The decision in *Sandstrom* will come as no surprise in this jurisdiction, for over six years ago the Kansas Supreme Court (*State v. Warbritton,* 211 Kan. 506, 506 P.2d 1152 [1973]) recognized the constitutional infirmity inherent in a "conclusive presumption" intent instruction when it rejected a one-sentence instruction similar to the one used in *Sandstrom.* The instruction rejected in *Warbritton* was the first sentence of PIK Crim. 54.01. The trial judge refused to give the second sentence which reads, "This presumption is overcome if you are persuaded by the evidence that the contrary is true." Both sentences were given in the case at bar. Under the facts of this case, the second sentence eliminates any possibility that a reasonable jury could have interpreted the presumption as "conclusive." Thus the sole focus of constitutional scrutiny in this case is confined to determining whether the language could reasonably be interpreted by the jury to shift the burden of persuasion on the issue of intent from the State to the defendant.

Prior to *Sandstrom,* the Kansas Supreme Court had considered PIK Crim. 54.01 and approved the same. In *State v. Lassley,* 218 Kan. 758, 545 P.2d 383 (1976), the Court said at 762-63:

"Defendant's final argument relates to the propriety of instructing the jury on the presumption of intent. The trial court, over defense counsel's objection, instructed the jury:

'There is a presumption that a person intends all the natural and probable consequences of his voluntary acts. This presumption is overcome if you are persuaded by the evidence that the contrary is true.' (Instruction No. 10.)

This is the instruction recommended in PIK Criminal 54.01. Defendant does not question that this instruction is merely a restatement of a firmly established principle of law, long recognized and applied by the courts of this state. (*State v. Donahue,* 197 Kan. 317, 416 P.2d 287; *State v. Eye,* 161 Kan. 69, 166 P.2d 572; *State v. Thomas,* 157 Kan. 526, 142 P.2d 692.) He contends, however, that the instruction creating a presumption of intent is in conflict with the mandate of K.S.A. 21-3201, which places upon the prosecution the burden of proving an act to be intentional. In other words, defendant argues that by instructing the jury that a person is presumed to intend all the natural and probable consequences of his voluntary acts, the court is switching the burden upon defendant to show they were unintentional.

"The presumption that a person intends all the natural and probable consequences of his voluntary acts is rebuttable, and may be overcome by evidence to the contrary. (*State v. Warbritton,* 211 Kan. 506, 506 P.2d 1152.) This principle is consistent with the requirement that the prosecution prove the criminal intent. Intent is difficult, if not impossible, to show by definite and substantive proof. Thus, it is agreed that criminal intent may be shown by proof of the acts and conduct of the accused, and inferences reasonably drawn therefrom. We fail to see any conflict with the statutory burden placed on the state.

"The propriety of the instruction given by the trial court is evident when the instructions are considered as a whole. This is especially true when the challenged instruction is read in conjunction with Instruction No. 9, which states:

'The law places the burden on the State to prove that the defendant is guilty. The law does not require the defendant to prove his innocence. Accordingly you must assume the defendant is innocent unless you are convinced from a consideration of all of the evidence in the case that he is guilty.'

The burden was properly placed on the state to prove defendant's guilt. The state was entitled to the presumption that defendant intended the natural and probable consequences of his acts and the trial court correctly instructed to that effect."

The identical "curative" instruction given in *Lassley* was given in the case before this Court. Instruction No. Six reads:

"The law places the burden upon the State to prove the defendant is guilty. The law does not require the defendant to prove his innocence. Accordingly, you must assume that the defendant is innocent unless you are convinced from all of the evidence in the case that he is guilty. You should evaluate the evidence admitted in this case and determine the innocence or guilt of the defendant entirely in accordance with these instructions. The test you must use is this: If you have a reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant not guilty. If you have no reasonable doubt as to the truth of any of the claims, you should find the defendant guilty."

This *Lassley* holding was recently reaffirmed in *State v. Woods,* 222 Kan. 179, 185-86, 563 P.2d 1061 (1977). Clearly, the Kansas Supreme Court does not consider PIK Crim. 54.01 to be "burden-shifting." Does *Sandstrom* dictate a different result? We think not.

Prior to *Sandstrom,* a number of United States circuit courts had considered similar instructions with varying results. The Second Circuit in *United States v. Robinson,* 545 F.2d 301, 306 (2d Cir. 1976), examined a "natural and probable consequence" instruction that contained the phrase "unless the contrary appears from the evidence" and held it to be a burden-shifting instruction and reversed the conviction because it was unable to say the instruction was harmless beyond a reasonable doubt.

The Third Circuit considered a nearly identical instruction to that given in *Robinson* and reached the opposite conclusion in

*United States v. Garrett,* 574 F.2d 778 (3d Cir.), *cert. denied* 436 U.S. 919 (1978). There, it was determined that when the instructions were considered as a *whole,* they fully informed the jury of the government's burden of proof on the issue of intent. The Court did, however, state that the instruction was confusing and, due to the extent of judicial time spent reviewing it, it would no longer approve the instruction, commencing ninety days after the filing of the *Garrett* opinion.

The Fifth Circuit examined the problem in *United States v. Chiantese,* 560 F.2d 1244 (5th Cir. 1977), and held that the qualifying phrase "unless the contrary appears from the evidence" might be interpreted as burden-shifting and, although it refused to reverse the conviction, it announced that ninety days after the date of the opinion it would not consider the instructions as a *whole* to ascertain if the burden-shifting charge had been corrected by other instructions defining the proper burden of proof.

After *Sandstrom,* the First Circuit in *Gagne v. Meachum,* 602 F.2d 471, 473 (1st Cir. 1979), examined the instruction, "When the fact of malice is shown there is nothing to rebut the natural presumption of malice[,] for the rational probability is that a man of sound mind intends the probable and natural consequences of his act," and approved the same.

The United States District Court in *McInerney v. Berman,* 473 F. Supp. 187 (D. Mass. 1979), considered a petition for writ of habeas corpus wherein the petitioner alleged that an instruction shifted the burden of proof. The instructions complained of are so dissimilar to the ones given in this case that it would not be beneficial to examine them in detail. What is of importance is that the Court examined the instructions as a *whole* and determined that a reasonable jury would realize that the trial court instructed on a permissible inference and not a conclusive presumption although it did use some phrases usually associated with mandatory presumptions. The Court emphasized that the defendant had offered no evidence at all, thus the jury would realize that the "disproof" was to be found in the State's evidence and as a result no burden was placed on the defendant.

We are convinced in this case that PIK Crim. 54.01 creates a permissive presumption and does not shift the burden of proof to the defendant. We note *Sandstrom* reaffirmed the long-standing

rule of the Supreme Court of the United States that instructions are to be considered as a *whole.* It did hold, as did Kansas in *Warbritton,* that other qualifying instructions are not sufficient to cure the error of a one-sentence instruction that a person intends all the natural and probable consequences of his voluntary acts. We note all of the circuit courts that have considered the question have also considered the instructions as a whole, and in *Garrett* and *Chiantese* a similar instruction to PIK Crim. 54.01 was found to be constitutional. Those circuits merely stated that the instruction might be confusing and ordered a new and different instruction given to conserve judicial time.

The defendant, Acheson, offered no evidence in this case. The jury was instructed that it was its duty to follow *all* of the instructions and that it *must not* single out one or more instructions and disregard others. The jury was further instructed to apply the instructions as a *whole* to the evidence. It was then instructed that there is a mandatory presumption of innocence in favor of the defendant that controlled unless the State proved each element of the crime beyond a reasonable doubt. While the second sentence of PIK Crim. 54.01 standing alone is possibly insufficient to satisfy *Sandstrom v. Montana,* 99 S.Ct. 2450, and *Mullaney v. Wilbur,* 421 U.S. 684, we are satisfied that a reasonable jury, considering the instructions as a whole, would not have interpreted the second sentence of PIK Crim. 54.01 as doing anything other than telling the jury that it could consider all the evidence offered by the State in its deliberations in order to ascertain whether the State had met its burden of proving every element of the crime charged.

We would emphasize that we are not bound by the circuit court decisions as we are by the decisions of the Supreme Court of the United States; and to the extent that we may appear to be in disagreement with one or more of the decisions, we choose not to accept their reasoning that the phrase "unless the contrary appears from the evidence" shifts the burden of proof from the State to the defendant or creates a conclusive presumption.

This does not mean, however, that PIK Crim. 54.01 cannot be improved upon. It can and should be altered to make it crystal clear that it is only a permissive inference, leaving the trier of facts free to consider or reject it, and does not shift the burden from the State to prove every element of the crime. We therefore

serve notice on the trial bench and bar that in the absence of directions otherwise from the Supreme Court, we, as did the Third and Fifth Circuits on a similar instruction, will not in the future approve PIK Crim. 54.01 if it is given in any proceeding tried more than fifteen days after the filing of this opinion.

Affirmed.