Filed 9/9/15  P. v. Sarwar CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066551 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. SCE327535, SCE327660) |
| QADAM SARWAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel B. Goldstein, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Barry Carlton and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Qadam Sarwar guilty of first degree burglary and receiving stolen property. (Pen. Code, §§ 459, 496, subd. (a).)[1] The jury also found true that the burglary was of an inhabited dwelling and a person was in the residence when Sarwar committed the crime. (§§ 460, 667.5, subd. (c)(21).) After waiving a jury on the prior-offense allegations, Sarwar admitted one serious felony prior and one strike prior. (§§ 667, subds. (a), (b)-(i).) The court imposed a sentence of 14 years four months.

Sarwar appeals, contending: (1) there was insufficient evidence to establish the entry element of the burglary charge; and (2) under Proposition 47 he is entitled to immediate reduction of his sentence on the receiving stolen property felony conviction. We reject these contentions. Substantial evidence supported the entry element. On his Proposition 47 contention, Sarwar is limited to the statutory remedy of petitioning the trial court for recall of his sentence when the judgment is final. (§ 1170.18; see *People v. DeHoyos* (2015) 238 Cal.App.4th 363 (*DeHoyos*).)

FACTUAL AND PROCEDURAL SUMMARY

On the afternoon of February 5, 2013, Deanne L. was at home with her daughter. Sarwar drove up to Deanne's home in a minivan with blue masking tape covering his license plate. He approached the front door and rang the doorbell repeatedly for about five minutes. Deanne became alarmed because she was not expecting any visitors, so she went to an upstairs window to see if there were any cars in the driveway. Her three dogs were "going absolutely crazy" barking at the sound of the doorbell. When the ringing

---

1    All further statutory references are to the Penal Code.

stopped, Deanne saw Sarwar walk away from the front door and run to the side of her house. At this point, Deanne's frightened daughter ran to an upstairs bathroom and called 911. Deanne then heard Sarwar hop the backyard fence, which was covered by bushes and trees.

Deanne's home has a back entrance that consists of two doors: the inner door is glass with a wood border, and the outer door is a security gate with metal bars and metal mesh between each bar.[2] Both doors were equipped with metal handles and deadbolt locks. Deanne testified that both doors were closed. The doors lead from the house to the enclosed backyard.

After hearing Sarwar hop the fence to the backyard, Deanne also called 911 and ran to the back of the house to look out a window to her yard. She heard Sarwar open the outer door and jiggle the handle of the inner door while the dogs continued to bark. Sarwar then hopped back over the fence to the front yard and got into his minivan.

As Sarwar drove away, he was stopped by the responding police officer and placed under arrest. He told the officer he was looking for another young man he had met the previous night at a 24-Hour Fitness gym. According to Sarwar, the young man had told him the street he lived on and said it was "either the fourth or fifth house on the left." Sarwar admitted he approached multiple homes, rang the doorbell several times on one of the homes, and knocked on a window looking for this young man.

---

[2] We augmented the appellate record to include Exhibits 2 through 6, which are images of the back door. (Cal. Rules of Court, rule 8.155(a)(1)(A).) Based on our review of these exhibits, Sarwar's description of this door as a "screen door" is not accurate. The door is a solid-looking metal mesh security door with a deadbolt lock.

About one year before this incident, Sarwar was questioned about another residential burglary where Rolex watches were stolen and pawned. A witness had reported seeing Sarwar knocking on doors, trying door handles, and going into back gates of houses. When Sarwar was confronted by police, he said he was looking for a friend he had recently met at a 24-Hour Fitness gym. Sarwar ultimately admitted to stealing the watches after being identified by a pawn shop employee.

After Sarwar was arrested in the instant case, police conducted a search of his apartment and found a stolen iPhone valued at $600.

Sarwar was charged with first degree burglary (Deanne's home) and receiving stolen property (the iPhone). The jury found Sarwar guilty of both of these charged offenses. It also found true that a person was present inside the residence at the time of the burglary. Sarwar admitted a prior serious felony conviction and a prior strike conviction. The court sentenced Sarwar to 14 years four months in prison. His sentence consisted of (1) an eight-year term for the residential burglary conviction (four-year middle term, doubled based on the prior strike); (2) 16 months for the receiving stolen property conviction; and (3) five additional years as an enhancement for a prior serious felony conviction.

## DISCUSSION

### I. *Substantial Evidence Supported Entry Element of Burglary Charge*

Sarwar challenges the sufficiency of the evidence showing he "entered" Deanne's residence to support the burglary conviction.

4

A. *Review Standards*

In reviewing the sufficiency of the evidence to support a conviction, we determine " 'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged.' [Citations.]" (*People v. Crittenden* (1994) 9 Cal.4th 83, 139, fn. 13.) Under this standard, we review the facts in the light most favorable to the judgment, drawing all inferences in support of the judgment to determine whether there is substantial direct or circumstantial evidence the defendant committed the charged crime. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496; *People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

The test on appeal is not whether the evidence proves guilt beyond a reasonable doubt, but whether substantial evidence, of credible and solid value, supports the jury's conclusions. (*People v. Arcega* (1982) 32 Cal.3d 504, 518; *In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 996.) In making the determination, we do not reweigh the evidence; the credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact. (*Ibid.*)

B. *Governing Law*

A person is guilty of burglary if he "*enters* any house" with the intent to commit larceny or any felony. (§ 459, italics added.) It has long been settled the slightest intrusion by any part of the body is sufficient for the entry. (*Magness v. Superior Court* (2012) 54 Cal.4th 270, 273 (*Magness*).) For an entry to occur, the outer boundary of the building must be penetrated. (*Ibid.*) " '[T]here is an entry when the defendant, after opening a closed door, steps across a threshold . . . or when, in the course of pushing

5

open a closed door or raising a closed window, his finger or hand happens to pass the line of the threshold or to pass through the opening." (*Id.* at p. 278.)

" '[I]n general, . . . doors . . . constitute . . . [a part] of a building's outer boundary, the penetration of which is sufficient for entry.' [Citation.]" (*Magness, supra*, 54 Cal.4th at p. 274.) Architectural components such as doors, windows, walls, and roofs generally mark a dwelling's outer boundary. (*People v. Valencia* (2002) 28 Cal.4th 1, 11 (*Valencia*).) When in a particular case the dwelling's outer boundary is not readily apparent, a "reasonable belief test" applies. (*Ibid.*) Under this test, the pertinent inquiry is whether the architectural component "encloses an area into which a reasonable person would believe that a member of the general public could not pass without authorization." (*Ibid.*) This is a legal question for the court rather than a factual issue for the jury. (*Id.* at p. 16.)

In *Valencia,* the California Supreme Court applied this reasonable-belief test to "conclude that penetration into the area behind a window screen amounts to an entry of a building within the meaning of the burglary statute even when the window itself is closed and is not penetrated." (*Valencia, supra*, 28 Cal.4th at p. 13.) In *Valencia*, the defendant held a screwdriver and removed a window screen from a bathroom window of a home, and tried unsuccessfully to open the window. (*Id.* at p. 4.) The court held this action was sufficient to constitute an entry for purposes of the burglary statute, reasoning:

> "Under the reasonable belief test . . . , a window screen is clearly part of the outer boundary of a building for purposes of burglary. A reasonable person certainly would believe that a window screen enclosed an area into which a member of the general public could not pass without authorization. . . . [W]indow screens, which

6

announce that intrusion is unauthorized, do not limit their message to flies but extend it to burglars as well.

We recognize that penetration into the area behind a window screen without penetration of the window itself usually will effect only a minimal entry of a building in terms of distance. But it has long been settled that '[a]ny kind of entry, complete or partial, . . . will' suffice. . . . All that is needed is entry 'inside the premises' . . . , not entry inside *some inner part of* the premises. Furthermore, there is little doubt that even the minimal entry effected by penetration into the area behind a window screen—without penetration of the window itself—is 'the type of entry the burglary statute was intended to prevent.' . . . Such an entry 'violates the occupant's possessory interest in the building. . . .' . . . It also threatens ' " 'the germination of a situation dangerous to personal safety.' " ' . . . '[T]he inhabitants of a building are just as likely to react violently to an intruder's penetration of their window screen as to the penetration of the window itself.' " (*Id.* at pp. 12-13.)

In holding that an entry occurred by intruding into the area behind the window screen, the *Valencia* court cited with approval several decisions recognizing that a locked porch gate and/or a screen door is part of the building's outer boundary. (*Valencia, supra*, 28 Cal.4th at pp. 11, 13, fn. 6; see, e.g., *Bowers v. State* (1982) 297 S.E.2d 359, 360; *State v. Jenkins* (Mo.Ct.App. 1987) 741 S.W.2d 767, 769; *State v. Gatewood* (1950) 221 P.2d 392, 396; *People v. Wise* (1994) 25 Cal.App.4th 339, 344-349; see also *People v. Moore* (1994) 31 Cal.App.4th 489, 492.) The *Valencia* court stated its holding "reflects and furthers the occupant's possessory interest in the building and his or her personal interest in freedom from violence that might ensue from unauthorized

7

intrusion." (*Valencia, supra,* 28 Cal.4th at p. 11; accord, *People v. Nible* (1988) 200 Cal.App.3d 838, 844-846.)[3]

## C. *Analysis*

The factual basis of Sarwar's burglary conviction was his entry into Deanne's home by entering the space behind the back security door. Before trial, Sarwar moved for a dismissal of the burglary charge based on his argument that an intrusion into this space without opening the interior glass door was insufficient to constitute an entry for purposes of the burglary statute. (§§ 459, 995.) The court rejected this argument, finding the security door was part of the outer boundary of the home.

Although not entirely clear, it appears Sarwar is challenging this determination. To the extent he is doing so, we reject the contention. Under *Valencia*'s reasonable-belief test, the back exterior door was clearly part of the home's outer boundary. The door was a security-type gate with metal bars running lengthwise, metal mesh between the bars, a separate handle, and a deadbolt lock. The door was in the back of the house where a person could enter only through a closed gate on one side of the house or by jumping a backyard fence. As with the screen window in *Valencia*, the space behind the security door in the enclosed backyard was a space into which a reasonable person would believe that a member of the general public could not pass without authorization, even if the

---

[3] Ten years after *Valencia* was decided, the California Supreme Court disapproved of dictum in a footnote suggesting that entering into an unenclosed balcony was not an entry for purpose of the burglary statute. (*People v. Yarbrough* (2012) 54 Cal.4th 889, 892-895; see *Valencia, supra*, 28 Cal.4th at p. 12, fn. 5.) This disapproval did not affect the continuing validity of *Valencia's* core holding and reasoning.

8

interior door or window was never opened.  Though Sarwar's entry was minimal in terms of distance, it is the type of entry that the burglary statute was intended to prevent because it threatens " ' " 'the germination of a situation dangerous to personal safety.' " ' " (*Valencia, supra*, 28 Cal.4th. at p. 13.)

Sarwar alternatively contends there was insufficient evidence to support the entry element because Deanne was "unable to *see* what was actually occurring."   (Italics added.)  However, Deanne testified she was certain she heard the outer door open, and was "[p]ositive" she heard defendant jiggling the handle of the inner door.  Further, she testified she had recently closed both doors after letting her dogs inside.  Based on this evidence, the jury could have reasonably concluded that Sarwar's hand passed an outer boundary of the residence by opening the outer security door and jiggling the handle of the inner door.  In light of Deanne's testimony that she *heard* the security door opening and the handle of the inner door being jostled, the jury had a reasonable basis to find that Sarwar's arm entered the house's outer boundary created by the security door.  This was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, that Sarwar's hand entered the residence within the meaning of section 459.

Sarwar also argues there was no entry because he was "far less intrusive" than the defendant in *Valencia* because he did not use any tools or damage the back outer door.  However, *Valencia*'s holding was not based on the level of interference with the window screen.  The court made clear that " '[a]ny kind of entry complete or partial . . . will' suffice," and "[a]ll that is needed is [a minimal] entry 'inside the premises.' "  (*Valencia, supra*, 28 Cal.4th at pp. 12-13.)  Further, the "requirement of a 'breaking' has long been

9

eliminated from our burglary statute." (*Magness, supra*, 54 Cal.4th at p. 278; see *People v. Barry* (1892) 94 Cal. 481, 482.) The evidence showing Sarwar jostled the interior door knob establishes that he entered the building for purposes of the burglary statute because he crossed the boundary created by the security door. Because there was an entry into the outer boundary, this case is unlike *Magness, supra*, 54 Cal.4th 270 in which the court held that using a remote control to open a garage door did not constitute an entry because there was no physical intrusion across the outer boundary. (*Id.* at pp. 273-280.)

Substantial evidence supported the entry element of the burglary crime.

II. *Proposition 47 Does Not Require This Court To Reduce Sarwar's Sentence*

Sarwar was convicted of receiving stolen property based on his possession of a $600 cell phone. In August 2014, the court imposed a 16-month consecutive sentence for this then-felony offense. Several months later, in November 2014, the voters approved Proposition 47, the " 'Safe Neighborhoods and Schools Act.' " (*T.W. v. Superior Court* (2015) 236 Cal.App.4th 646, 650.) Effective November 5, 2014, the proposition amended various statutes to provide certain offenses are now punishable as a misdemeanor rather than a felony. (*DeHoyos, supra*, 238 Cal.App.4th at p. 366.) As relevant here, Proposition 47 requires a misdemeanor sentence (for qualifying defendants) instead of a felony sentence for theft offenses of property valued at $950 or less. (§ 496, subd. (a).) It also created a petition procedure for persons "currently serving" a felony sentence for an offense that is now a misdemeanor. (§ 1170.18.)

Sarwar contends that under *In re Estrada* (1965) 63 Cal.2d 740, Proposition 47 operates retroactively to require this court to impose the lighter misdemeanor punishment

10

on the receiving-stolen-property conviction because his judgment was not yet final when the new law became effective. Sarwar asks this court to either reduce his sentence or remand to the trial court for resentencing.

This court recently considered the issue of Proposition 47's applicability to defendants who had been sentenced but whose judgments were not yet final when the proposition became effective. (*DeHoyos, supra*, 238 Cal.App.4th at pp. 366-367.) We concluded that to be considered for resentencing, a defendant must utilize the recall procedure specified in section 1170.18, and is not entitled to immediate relief on appeal from the judgment. (*DeHoyos, supra*, at pp. 367-368; accord *People v. Shabazz* (2015) 237 Cal.App.4th 303, 313-314; *People v. Noyan* (2015) 232 Cal.App.4th 657, 672.)

We explained that the initiative measure set forth its express purpose as authorizing " '*consideration of resentencing* for anyone who is *currently serving* a sentence for any of the [listed] offenses' " and " '[r]equir[ing] a thorough review of criminal history and risk assessment of any individuals *before resentencing* to ensure that they do not pose a risk to public safety.' " (*DeHoyos, supra*, 238 Cal.App.4th at p. 368, italics added.) Consistent with this purpose, section 1170.18 states: "(a) A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under [Proposition 47] had [it] been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing . . . ." Viewing the statute's stated purpose and plain language, we concluded the voters intended that a defendant in Sarwar's position must utilize the recall

11

procedure specified in section 1170.18 to be considered for resentencing. (*DeHoyos, supra*, at pp. 367-368.)

Because Sarwar is "[a] person currently serving a sentence for a conviction . . . of a felony or felonies who would have been guilty of a misdemeanor under the act" (§ 1170.18, subd. (a)), he potentially benefits from Proposition 47 on his receiving stolen property offense. Thus, he is permitted to exercise the statutory petitioning remedy for recall of sentence in the trial court. A recall petition under Proposition 47 may be filed once the judgment is final and jurisdiction of the case has been returned to the trial court. (*DeHoyos, supra*, 238 Cal.App.4th at pp. 367-368.)

## DISPOSITION

Judgment affirmed.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.